## CHARLES E. BANCROFT, plaintiff in error, vs. WILLIAM E. PETERS, defendant in error.

In a suit concerning the charges for transportation of marble, the amount of charges depending upon whether the marble, which was sawn in slabs, was "wrought" or "unwrought," the Court properly charged the jury, "that the terms 'wrought' and 'unwrought,' as applied to marble, were of doubtful signification; that it was competent for the owner to show what meaning was given them by custom and usage; that such custom, in order to bind the carrier, need not be universal, settled or uniform among dealers or carriers; and that if the jury believed, from the evidence, that the generally prevailing usage among manufacturers, dealers, and carriers, was to class marble in slabs as unwrought, then the carrier could only claim freight on it as of that class, to wit: unwrought."

In an action of replevin against a carrier of goods claiming the right to retain them until the freight is paid, it is competent for the owner to prove damages to them in their transit, in order to reduce the amount of freight actually due, or to show that nothing is due; thereby manifesting that the defendant had no right to the possession of the goods.

Error to Wayne Circurt.

This was an action of replevin, brought by the defendant in error before a Justice of the Peace originally, for certain marble. The marble was the property of the defendant in error, subject to a lien in favor of the plaintiff in error, for an amount due him in his own right, and as agent of the

New York and Erie Railroad Company, for freight from New York and for storage at Detroit. The marble was in slabs, sawed from blocks. The defendant in error tendered the plaintiff in error $21.35 for the freight and charges before the suit was brought, but the latter declined to receive that sum, claiming to be due him for freight and storage, $53. The rates of freight, according to the proof, from New York to Detroit, charged by the Railroad Company on marble, were, as published and advertised, $1.06 on wrought marble per one hundred pounds, at owner's risk, and on unwrought, sixty-seven cents per one hundred pounds. The marble was receipted for by the receiving clerk, as "unwrought marble in boxes." Proof was introduced, showing the custom of the New York Central and Boston and Worcester Railroads to be, to class marble, sawed in slabs, as unwrought, and to charge freight upon it accordingly ; and that among marble masons, quarriers, and dealers in it, it was generally called unwrought.

The plaintiff in error then offered proof tending to show, that there was no general, universal, or uniform rule or usage on this point ; that some Railroads and Transportation Companies consider it as wrought, and others as unwrought. Also, that the freight agent of the New York and Erie Railroad made the classification of freight, and that he intended to class marble like this as wrought marble, and that it had been his practice, and that of other agents of the road so to class it ; and that if marble sawed in slabs had been receipted for by officers of the road, it was by mistake, and without authority, and contrary to its rules ; that each railroad had its own classification of freight, and that there was no general rule or understanding on that subject. He also offered evidence tending to show, that a considerable amount of labor and time is required to saw marble into slabs ; that marble is frequently shipped and sold in blocks, rough from the quarry. That railroads, in classifying goods, graduate

their charges according to the liability of the articles to break or be injured, and also, according to their value. That marble in slabs is as likely to break as if polished or finished, but is not so valuable; that the only work intended to be done on the marble in question, was polishing and rounding the corners.

The defendant in error then offered evidence tending to prove, that shortly after his marble was received at Detroit, said railroad published a new classification and tariff, in which marble was charged thus: "Marble wrought, owner's risk, $1.55 for one hundred pounds; marble in slabs, unwrought, owner's risk, $1.23 per one hundred pounds." And, therefore, the Court gave the jury the following instructions, viz.: "That the terms 'wrought' and 'unwrought,' as applied to marble, are words of doubtful signification, and it was competent for the plaintiff to show what meaning is given to them by custom and usage; that such custom, in order to bind the defendant, need not be universal, settled, or uniform, among dealers and carriers. If the jury believe from the evidence, that the generally prevailing usage among manufacturers, dealers, and carriers, is to class and consider marble in slabs as unwrought, then the defendant can claim freight upon it only as of that class, viz.: unwrought."

To which instruction the defendant's counsel excepted.

The plaintiff then offered testimony, tending to prove the amount of certain damage which the marble had sustained in its transit. The defendant objected to the introduction of such evidence, on the ground that it was, under the issue joined in the case, irrelevant and immaterial; but the Court overruled the objection, and admitted the evidence; to which ruling the defendant excepted, and brought this writ of error.

*Towle, Hunt & Newberry*, for plaintiff in error.

The terms "wrought" and "unwrought," have a general, popular meaning, which cannot be mistaken. They mean,

simply, " worked," or " worked upon," or the reverse. The term, " wrought marble," means marble upon which labor has been bestowed, as contradistinguished from marble rough from the quarry. These words are to be taken, like all other words, in their general, popular sense, unless it be shown that they have, by usage, acquired a meaning different from that in a particular locality, or in a particular trade. (*Robertson* vs. *French*, 4 *East*, 135 ; *Dawson* vs. *Kittle*, 4 *Hill*, 107; *Rogers* vs. *Mech. Ins. Co.*, 1 *Story*, 606; 4 *Hill*, 104.)

The proof that such local or technical usage does exist, must be clear, explicit and decisive ; so much so, as to leave no doubt as to the extent and meaning of the usage. (*Dawson* vs. *Kittle*, 4 *Hill*, 107.)

The usage must be general, uniform, well known, public and notorious. (*Gibson* vs. *Culver*, 17 *Wend.*, 306, 308, 310, 312; *Gordon* vs. *Little*, 8 *Serg. & R.*, 539; *Goodyear* vs. *Ogden*, 4 *Hill*, 105; *Desha, Smith & Co.* vs. *Holland*, 12 *Ala.*, 519; *Parrott* vs. *Thacher*, 9 *Pick.*, 430; *Ralph* vs. *Palmer*, 3 *Watts*, 179; *see also* 2 *Cow. & H. Notes*, 1412, *and cases there cited.*)

The usage must be proved to exist in the place where the contract was made. In Williams *vs.* Gilman (3 *Greenl.* 276, 281), Mellen, C. J., likens a local usage to the *lex loci contractus ;* so, also, Story, J., in Hazard *vs.* The N. E. Ins. Co. (1 *Sumn.*, 218, 234). See the following cases : Bayliffe *vs.* Butterworth, 5 Rail. and Canal Ca., 283, 287, 288; Smith *vs.* Wilson, 3 Barn. & Ad., 728, 731, 732, 733; Aston, J., in 5 Burr, 2714; Stultz *vs.* Dickey, 5 Binn., 287, 289; Wallace *et al., vs.* Bradshaw *et al.*, 6 Dana [Ky.], 385 ; Mason *et al. vs.* Franklin Fire Ins. Co., 12 Gill & J., 472; Putnam *vs.* Tillotson, 13 Metc., 517.

The usage must be shown to exist in the particular trade to which the contract relates. (In the present instance the contract related to the *transportation* of goods—the " carrying" trade.) (*Williams* vs. *Gilman*, 3 *Greenl.*, 276, 281.)

Charles E. Bancroft, plaintiff in error, *vs.* Wm. E. Peters, defendant in error.

In this case, the Court said, that parties dealing with the members of a particular trade, in relation to transactions connected with that trade, are presumed to know, and are bound by the usages of that trade. (*Barber* vs. *Brace*, 3 *Conn. R.*, 9, 13; *Baxter* vs. *Leland*, 1 *Blatch.*, 526; *Lapham* vs. *Atlantic Ins. Co.*, 24 *Pick.*, 1, 4; *Halsey* vs. *Brown*, 3 *Day*, 346; *Pierpont* vs. *Fowle*, 2 *Wood. & M.*, 23, 43; *Gibson* vs. *Culver et al.*, 17 *Wend.*, 305; *Whitmore* vs. *Pegram et al.*, 14 *Miss.*, 9; *Pittsburgh* vs. *O'Neill*, 1 *Penn. St. R.*, 342; *Goddard* vs. *Bulow*, 1 *Nott & McCord*, 45.)

The Court below erred in admitting proof of damage to the marble, while in transit.

The only ground upon which he could claim such right, was upon the principle of "recoupment." Now, recoupment is in the nature of a cross action, and the party sued cannot avail himself of it as defence, unless he gives notice with his plea of his intention to do so. (*The Mayor of Albany* vs. *Trowbridge*, 5 *Hill*, 71; *S. C., affirmed*, 7 *Hill*, 429; *Barber* vs. *Rose*, 5 *Hill*, 76, 81; *see also Nichols* vs. *Dusenbury*, 2 *Conn.*, 283.)

*Walkers & Russell*, for defendant in error.

The instruction of the Court to the jury was correct. The words in question, as used in reference to marble, are of doubtful import. But little need be said as to the extent and nature of the usage required, to establish an applied or technical meaning. It is clear, that it was necessary to show nothing more than a *prevailing* usage. It certainly cannot be necessary to show a usage without a single exception. The word *uniform*, in respect to usage, is not to be understood literally. There is no practice among men general, without exception. It was for the jury to say, whether the parties could fairly be supposed to have contracted with reference to a usage. (2 *Stark. Ev.*, 259; 2 *Greenl. Ev.* 207; *Williams* vs. *Gilman*, 3 *Greenl.*, 276; *Parrott* vs. *Thacher*,

9 *Pick.*, 426; *Vail* vs. *Rice*, 1 *Selden*, 158; *Astor* vs. *Ins. Co.*, 7 *Cow.*, 210; *Desha* vs. *Holland*, 12 *Ala.*, 513; *Van Ness* vs. *Pacard*, 2 *Pet.*, 148, 149; *C. & H. Notes*, n. 953 *to p.* 541, *n.* 954, *p.* 1412, *seq.; 2 Pars. Cont.*, 56.)

But, grant that the charge was wrong; it was really in favor of the defendant, who excepted, and could not affect the result of the suit. There is, then, no ground for a new trial. (2 *U. S. Dig. Supp.*, *p.* 444, § 329; *Bingham* vs. *Gurney, Manning*, 349; *Marston* vs. *Mobile Bank*, 10 *Ala.*, 284.)

The Court properly overruled the objection which was made to the introduction of evidence of damage to the marble, while in transit, upon the ground that it was irrelevant under the issue joined in the cause. This action was replevin, in which the plea was the general issue ; commenced before a Justice, and appealed to the Circuit Court. It was there said that the testimony offered was inadmissible, because no notice of recoupment of damage had been given by the plaintiff. It was replied, and we now say, that, under the pleadings and form of action, the plaintiff could give no notice. Besides, the evidence was not of a set-off, but simply of *reduction* of the amount for which defendant claimed a lien ; unliquidated damages growing out of the very service giving the lien. The *reasons* of the rule requiring notice in cases of set-offs—which are commonly matters distinct from the counter claim, viz., to prevent surprise, and give time to prepare to avoid—do not exist in cases of recoupment. Here, the party claiming freight was already apprised of the nature and extent of the damage.

Of the general principle, that a consignee may legally deduct from the frieght any damage sustained by goods while in the hands of the carrier, there can now be no doubt. It is a good example of that adoption of the principles of equity jurisprudence into the common law, of which the modern reports afford so many instances. Rules for producing

singleness of issue have slowly yielded to forms ensuring substantial justice.

It would be inequitable to drive the consignee to his cross-action.

The question is not an open one in this Court. In Ward vs. Fellers (3 Mich., 281, 1854), it was exhaustively treated; and we refer to the able opinion in that case, and the authorities cited by defendants. And, also : Boggs vs. Martin, 13 Ben. Monroe, 239; Waring vs. Morse, 7 Ala., 343; Ewart vs. Kerr, 2 McMullan, 141; Edwards vs. Todd, 1 Scam., 463; Leech vs. Baldwin, 5 Watts, 446; Gogel vs. Jacoby, 5 S. & R., 117; Bowman vs. Hilton, 11 Ohio, 303; Schureman vs. Withers, Anthon, 166; Angell Car., § 415; Sedg. Dam., 485.

By the Court, JOHNSON, J.

It was insisted by the counsel for plaintiff in error, that the question whether the marble was "wrought" or "unwrought," should not have been submitted to the jury at all; that it became the duty of the Court to instruct them that this was "wrought" marble, because it appeared that work had been bestowed upon it, and they now insist that these terms have a general popular meaning, which cannot be mistaken ; they mean, say the counsel, "worked," or "worked upon," or the reverse. "The term wrought marble means, marble upon which labor has been bestowed as contradistinguished from marble wrought from the quarry."

We think the conclusion is not warranted, unless they rely solely upon the definition "worked upon," the term "worked," and other definitions of Webster, such as "formed, worked, or labored," "performed," "fitted," all imply something more ; they imply that the thing is fashioned or prepared for some general or particular use. Now I am not aware that marble thus sawed is ever used in that condition for any purpose ; it is sawed into slabs preparatory to being worked, or fitted for

some particular use or purpose, so we think that the popular definition is against the plaintiffs.

After all, the real question is, how were these terms understood between the contracting parties. It is true that the popular sense is to control, until it shall appear to have been used in a different sense; until that shall appear, it can never be submitted to a jury; but, when that shall so appear, then it becomes a question of fact for them to determine upon the evidence in the case. But how does the plaintiff stand in this respect? He represents the New York and Erie Railroad Company; they received and shipped the property as "unwrought marble." In the absence of any testimony and unexplained, *that* must be presumed to have been the agreement between the parties; that is, it must be presumed that both parties understood that it was to be shipped as "unwrought marble." The plaintiff, then, had to rebut that presumption· by proof. The agent of the Company was sworn in the case, and testified that it was so designated by mistake; that he, the witness, and other officers of the Company, had always regarded this species of property as properly designated by the term "wrought." This opened the case for further evidence, and it became a question of fact to know in what sense these terms were used by manufacturers, dealers and carriers, when applied to marble, and upon this point there was considerable evidence; and the Court could not have done less than to submit it to the jury, and it was so submitted, and the jury found against the plaintiff; and we cannot say that the verdict was wrong, nor can we say that any improper evidence was submitted to them. Most of the objections urged, are objections which relate to the kind of evidence admissible to prove the issue, as that it should have been limited to a particular place and trade. It will be presumed, in the absence of any showing to the contrary, that the charge related to, and had reference to the evidence in this case, and no objection, whatever, was

made to the evidence. What we mean to say is *this* : that we must presume that the evidence was as unlimited as to place and trades, as the language of the charge indicated ; indeed, the record so shows ; that it was not limited to any particular place, nor to any particular trade, but, in that respect, corresponded with the charge. The inquiry was extended to manufacturers, dealers and carriers generally.

If the counsel for the plaintiff had considered this general evidence inadmissible, they should have objected ; or, having failed to do that, they should have requested the Court to exclude this part of the evidence from the consideration of the jury; but, doing neither, they cannot avail themselves of their objections here. A party cannot assign error upon a general exception to the charge of the Court commenting upon evidence in the case, which was received without objection ; *that* would lead to the examination of questions here which had never been submitted to the consideration of the Court below, and to which their attention had never been called. So far as the record shows, it was never intimated to the Court below that the charge was exceptionable, for the reasons urged before this Court. We, therefore, think that this exception is not well taken.

The remaining error assigned, is that the Court erred in overruling the objection of the plaintiff to the evidence offered by the defendant, showing damage to the property while in transit.

The record shows the grounds of this objection to have been, that such evidence under the issue, was irrelevant and immaterial.

The action was replevin, commenced before a Justice of the Peace. The plea was the general issue. The plaintiff claimed under that issue, that he had a special lien upon the property for freight. The defendant offered evidence to reduce the lien, by showing injury to the property while in transit.

The objection to this evidence, as urged by counsel is, that it is in the nature of a recoupment, and not admissible without notice. No notice could have been given in this case by the rules of pleading ; besides, special pleading is not required in a Justice's Court. It is sufficient that the plaintiff set forth his cause of action, and the defendant his defence, to entitle the cause to be heard upon its merits. And the real question is, whether this evidence is admissible upon principle ; in other words, whether a plaintiff can be allowed to recoupe his damages in this form of action.

This Court held in the case of Ward *vs.* Fellers (3 *Mich.*, 281), that it was competent for the owner of property, at the suit of a common carrier for freight, to recoupe the damage done to goods in transportation. This case was not considered as extending the doctrine of recoupment beyond what is generally sanctioned by the American authorities, and a refusal to apply the doctrine of that case to the case at bar, would lead to a great inconsistency. By the law as established in that case, the owner of goods would be entitled to a delivery of them upon a tender of the freight, less the amount of the damage done to the goods. By such a tender, the lien would be discharged.; but though the lien should thereby be discharged, and the owner should be entitled to the possession of his goods, it could be of no benefit to him, unless the bailee would consent to deliver them up; for the only adequate remedy, in case of refusal, would be to replevy the goods ; and the moment he does *that*, if the doctrine contended for in this case be true, that moment his right is lost.

It is true, that the right of the plaintiff to show his damages to the extent of the lien, in this form of action, is not, strictly speaking, recoupment ; for that term is expressive of a right of a defendant to deduct or abate from the plaintiff's damages, any right of action which the defendant may have, growing out of the same transaction, founded

either in tort or in contract ; but the right is the same, whether expressed by one term or another, or claimed by a plaintiff or defendant.

The real issue in this case, is the amount of the lien. It is precisely the same as was in the case of Ward *vs.* Fellers, and as would have been in *this case*, if the defendant had brought suit for freight.

The case of Baggs & Russel *vs.* Martin (13 *B. Mon.*, 239), is in point. In that case the Court say: "As the defendant claimed the right to retain possession of the goods until the freight due was paid, the plaintiff had the right to introduce proof to show the extent of the damage done to the .goods, for the purpose of reducing the amount of freight actually due on that account, thereby manifesting that the defendant had no right to the possession of the goods."

Upon the question of the right of the defendant to recoup, in a suit brought by a carrier to recover freight, there is some conflict of authority. But, whichever way the weight of the authority may be, upon a careful examination, is now of no consequence, for with us the question is at rest ; and having recognized *that* right in the owner of property, it follows, upon principle, that the benefit thereby secured is not dependent upon the form of action.

The judgment of the Court below must be affirmed, with costs of this Court.

Present, JOHNSON, WILLSON, BACON, MARTIN, J. J.