MIAMI POWDER COMPANY v. PORT ROYAL, &c., RAILWAY COMPANY.

1. COMMON CARRIER—OWNER OF GOODS—ACTION.—Goods do not change their ownership by being in the charge of a common carrier, whose only rights are a lien for charges, and whose duty is to deliver them uninjured to the consignee; and, therefore, when the carrier has injured these goods *in transitu*, a right of action arises in favor of the owner.

2. FORM OF COMPLAINT.—In such action the complaint should indicate the form of action, as, *e. g.*, whether damages are claimed for partial loss, or for delay in delivery, or for conversion.

3. IBID.—ACTION OF TROVER.—As the complaint in this case alleged a right of property and possession in plaintiff and a conversion by defendant, the action was like to an action of trover at common law.

4. GOODS INJURED BY COMMON CARRIER—ACTION.—Under the older decisions of this State, a consignee could sue the common carrier in trover for goods injured in carriage, where the injury amounted to more than the freight charges, and in such case the carrier lost his lien for freight; but the more recent decisions, hereby reaffirmed, require the owner to pay all freight charges and then sue the carrier for the injury done.

5. FREIGHT CHARGES—VERDICT—INTEREST.—Where the verdict for the plaintiff was for the full amount of the value of the goods at the place of destination, without any allowance for freight charges, a new trial must be granted. It cannot be assumed that the jury allowed interest to the same amount as these charges, when no interest was demanded in the complaint, and no instructions as to interest given in the judge's charge.

Before WALLACE, J., Greenville, March, 1891.

This was an action by the Miami Powder Company against the Port Royal and Western Carolina Railway Company. In overruling defendant's objection to a question asked a witness by plaintiff's counsel, the judge ruled as follows:

In this case of *Shaw & Austin* v. *The South Carolina Railroad Company*, the road undertook to transport ten barrels of molasses; the consignee received eight, they refused to receive the other two—because, as they alleged, a large portion of the molasses had leaked from the other two. There was no allegation of injury to the other—nothing to show damage, so as to prevent the sale of the goods by the consignee. The only ground of objection was that the goods ordered had been injured in quantity while they were in transitu. In this case

the allegation is that a large proportion of the goods were injured, in that the packages were bruised and bent in such a way as to inhibit the sale of the powder. Right there is the essential difference between Shaw & Austin and this case, and right there the witness says that he could not effect a sale of the kegs while they were in that condition, and, therefore, he refused to receive them, not because they had been affected in quantity, but that they were damaged in quality. Now, I do not think it can be held by any court, that a consignee must receive goods that have been injured in transitu, and injured to such an extent as to be unsalable, and before he has a bill for them; it would be tantamount to holding that, and because the plaintiff here refuses to receive the goods, not upon the alleged ground of the quantity being affected, but on account of the quality having been affected. He offered to receive the salable goods—he was not bound to receive the balance; the measure of his damages is the injury to his goods. I do not think the absolute value of the goods is always the measure of the damages; but I think, if the goods are injured, the measure of the damages is the injury to the goods, as I have said before.

So much of the judge's charge to the jury as has any bearing upon the points decided by this court was as follows:

"Seventh. [Defendant's 7th request to charge.] The law of South Carolina requires consignees to receive shipments of goods, even if they are damaged, and then bill the railroad for the damage. Consignees cannot refuse to receive goods because they are damaged. If the goods have been duly tendered to the consignees, and refused by him, the owner is responsible for all loss subsequent thereto." Well, I cannot charge you that as requested, because I cannot conceive that the liability of a common carrier is contingent upon a consignee actually receiving the goods. Whether he receives them or not, it does not alter the relative rights of the parties; he is not bound to receive them as a condition of the right of action against the company. Now, to illustrate: suppose some one at a remote point consigned two horses to a consignee here in Greenville, and one of those horses was killed in an ac-

cident and both brought here in the car, and the railroad com-
pany says: Here are your horses; and he says: I don't want
the dead one, I will take the live one; the railroad company
says: Both or none.   He says: I won't do it, I will pay you
the freight on the live one, I don't want the dead one; he can't
compel the consignee to take the dead horse, as a condition to
bring his action by reason of his being killed.   The fact that
he don't take him does not alter the rights of the parties ; and
whether he takes him or not, has no effect upon the measure
of damages; he is his property, he belongs to him, and the
killing does not transfer the title from the consignee to the
railroad ; and that is exactly the doctrine set out in the case of
Shaw v. Austin.   They refused to take two barrels of molasses,
but they took eight, and they bring their action for the whole
value of the two barrels; and the court says, you cannot re-
cover that, you can only recover for what has been lost.   He
had never received it or taken it out of the depot, but they
could only recover to the extent of the injury that they had
sustained, and the plaintiff was non-suited, because the amount
of the injury was below the jurisdiction of the court.

So I hold here, that the consignee may receive the goods or
not, at his option.   If he refuses to receive them, it does not
give him any right that he has not before; it does not alter
their respective rights and liabilities; the carrier has contracted
to safely deliver; his performance is the condition of the obli-
gation of the consignee to receive and pay freights.   Now, I
have charged you upon the subject of a conversion.   If a plain-
tiff, who is also a consignee, brings his action against the rail-
road company, and shows that the railroad company has under-
taken to transport his property, and has transported it, and
upon his demand refuses to deliver it to him, he can bring his
action for the value of the whole property, or, if it is separable,
such parts of it as he demands as in good condition.   If pro-
perty in bulk is damaged, and the damaged parts cannot be
conveniently separated from that that is not damaged, then the
railroad company can say, take all or none; but where it is
separable, the rule is different.   What right has the common
carrier to hold your property?   It is yours, and he has no right

to hold it; that is neither reason nor law. I do not refer to the lien on freight—of course, what is demanded must be free of freight charges.

"Eighth. If the freight arrives at the point of destination in a damaged condition, the consignee cannot elect to take the sound portion and reject the unsound portion, paying freight charges on the sound portion. But consignee must take the whole, paying charges for the whole, and then proceed to make claim against the carrier for the damage." I have already charged you upon that subject. If the property is in bulk, where it cannot be conveniently separated, the sound and the unsound, then he can take or refuse; he can leave it in the depot, if he sees fit, and bring his action and recover what has been damaged; the fact that he refused to take it, does not affect his rights. But if it is separable, and part of it is sound and uninjured, it is his, and he has the right to claim and receive it, and the railroad company has no right to refuse it, except upon his refusal to pay the charges.

"Ninth. The defendant has, in this action, sued the plaintiff, by way of counter-claim, for freight charges and storage. If you find that these have been proven, you will give the amount full consideration. If the damages proven are larger than this amount, you will abate it therefrom; if the amount is larger than the damages proven, you will deduct the damages proven from the amount of freight and · storage, and give a verdict for the remainder to the defendant." I so charge you. Now, as I have already said to you, I don't think a consignee is obliged to accept damaged goods and pay the freight on them, as a condition to his right of action, if he brings his action and recovers the value of the goods at the place of destination. I think probably he should pay freight, because that would put him *in statu quo,* would put him where he would have been if the goods had sustained no injury at all. If he has property in the depot which the railroad company refuses to deliver upon demand, he has the right to recover the value of the property; and if the railroad company is a wrong-doer, I don't think it could recover freight. If the railroad company refused to deliver goods to the consignee, Mr. Williams,

6—38

when he was entitled to them, then Mr. Williams would not be bound for any expense which was subsequently incurred. If Mr. Williams was entitled to any portion of it and it was refused, and the powder was stored, the storage was a wrongful act, and Mr. Williams would not be responsible for it. Now, suppose somebody has a horse and you claim it, and he puts it in a livery stable, and you bring your action to recover it, and to recover it on the grounds of ownership, of course, the defendant could not claim the amount of the livery stable bill. But, of course, if Mr. Williams was in the wrong, the plain duty of the railroad company would be to store the property at Mr. Williams' risk. I don't know that I need say anything more, gentlemen.

If you find for the plaintiff, you will simply find for the plaintiff what injury he has sustained. If you find for the defendant, you will find for the defendant such sum that he is entitled to under the law and the evidence. Take the record.

Verdict was for plaintiff, and defendant appealed.

*Messrs. Joseph Ganahl* and *M. F. Ansel,* for appellant.

*Messrs. Wells & Orr,* contra.

December 8, 1892.   The opinion of the court was delivered by

MR. JUSTICE POPE.   In August, 1888, the plaintiff employed the defendant to transport from Augusta, Georgia, to Greenville, in this State, 400 kegs of powder, consigned to James T. Williams & Co., who were the agents of plaintiff at Greenville, S. C. The value of the powder at Greenville, S. C., was $2.15 per keg, aggregating $860. The freight charges were $137. While on the way over the defendant's road, the car in which the powder was being carried to its destination was thrown from the track, and the powder and the kegs holding the same were injured both by the violence of the derailing and also by a rain that fell upon it. In this damaged condition the defendant, both formally and informally, offered to turn over the consignment to the consignee, but upon the express condition that the freight charges should be first paid. This offer was

declined by the plaintiff.    Thereupon the defendant stored the whole 400 kegs of powder in the warehouse of Ferguson & Miller, in Greenville, at the price of $4 per month.

Plaintiff then instituted an action against the defendant, in the Court of Common Pleas for Greenville County, in this State, on two causes of action, as set out in the complaint, the first of which alleged that, by reason of the negligent conduct and misbehaviour of the defendant as a common carrier in the transportation of the powder in question, the same were wholly lost to plaintiff, to his damage $860; and the second of which alleged that, by defendant's negligence and misbehaviour as a common carrier in the transportation of such powder, the goods were damaged one-half of their value, to plaintiff's damage $430.

The answer of defendant, while admitting its employment as a common carrier by the plaintiff for the 400 kegs of powder, denies any liability for damages upon three grounds : *first,* that the terms of a special contract exempted the defendant from any liability, that otherwise might have attached to it as a common carrier, for any accident incident to railroad transportation, or from leakage, breakage, loss in weight, or damage by heat, wet, or decay ; *second,* that plaintiff had failed, within ten days succeeding contract of shipment, to make claim for total loss, or in twenty-four hours after offer of delivery of consignment, both of which appeared in the special contract ; *third,* that all injuries to the powder occurred through an accident on defendant's road, but the damage was slight, consisting of some indentations to the kegs, and that when the powder was offered to the consignee, he refused to take it.    As a counter-claim, the freight charges of $137 were set up.    The answer also controverted the facts embodied in plaintiff's second cause of action.

The cause came on to be heard by his honor, Judge Wallace, and a jury, at the March Term, 1891, of the Court of Common Pleas for Greenville.    The first cause of action was relied on. The verdict of the jury was for the plaintiff, in the sum of $860. After judgment, the defendant appealed to this court, on the following grounds :

1. Because the Circuit Judge erred in refusing to grant a

non-suit as to the first cause of action set out in the complaint, there being no evidence of a total loss, or of conversion on the part of appellant.

2. Because the Circuit Judge erred in refusing to charge the jury, as requested by defendant, as follows: "That if the plaintiff failed to make a claim for the damage to the powder within the time limited in the bill of lading introduced in this case, then the plaintiff cannot recover, and their verdict must be for the defendant."

3. Because his honor, the Circuit Judge, erred in refusing to charge, as requested by the defendant: "That there being no evidence of a conversion of the powder by the defendant in this case, the plaintiff cannot recover as for a total loss, but only for the damage done to the powder at the time of the tender made to the consignee."

4. That his honor, the Circuit Judge, erred in refusing to charge the jury, as requested by the defendant: "That if the jury believe from the evidence that the goods were only damaged, then the consignee was bound to receive them, and make his claim for the damage; but he cannot abandon them, and sue the carrier for a total loss."

5. Because his honor, the Circuit Judge, erred in refusing to charge the jury, as requested by the defendant: "The law of South Carolina requires consignees to receive shipments of goods even if they are damaged, and then bill the railroad for the damage. Consignees cannot refuse to receive goods because they are damaged; if the goods have been duly tendered to the consignee and refused by him, the owner is responsible for all loss subsequent thereto."

6. Because the Circuit Judge erred in refusing to charge the jury, as requested by the defendant: "If the freight arrives at the point of destination in a damaged condition, the consignee cannot elect to take the sound portion and reject the unsound portion, paying freight charges on the sound portion only. But the consignee must take the whole, paying freight charges for the whole, and then proceed to make claim against the carrier for the damage."

7. Because his honor, the Circuit Judge, erred in refusing

to charge the jury, as requested by the defendant: "That if the jury believe from the evidence that no damage was done to the powder, but only the cans were damaged, then the plaintiff cannot recover, as the action is for damage to the powder and not to the cans, and their verdict must be for defendant."

8. Because his honor, the Circuit Judge, after having given defendant's ninth request to charge, as follows: "The defendant has in this action sued the plaintiff, by way of counterclaim, for freight charges and storage. If you find that these have been proven, you will give the amount proven full consideration. If the damages proven are larger than this amount, you will abate it therefrom; if the amount is larger than the damages proven, you will deduct the damages proven from the amount of freight and storage, and give a verdict for the remainder to the defendant;" erred in that he proceeded to qualify the same as follows: "I don't think a consignee is bound to accept damaged goods and pay freight on them, as a condition to his right of action. If he brings his action and recovers the value of the goods at the place of destination, I think, probably, he should pay freight, because that would put him *in statu quo*—would put him where he would have been if he had sustained no injury at all. If he has property in the depot which the railroad company refuses to deliver upon demand, he has the right to recover the value of the property, and if the railroad company is a wrong-doer, I don't think it could recover freight. If the railroad company refused to deliver goods to the consignee, Mr. Williams, when he was entitled to them, then Mr. Williams would not be bound for any expense which was subsequently incurred. Now, if Mr. Williams was entitled to any portion of it, and it was refused and the powder was stored, the storage was a wrongful act, and Mr. Williams would not be responsible for it."

9. Because the Circuit Judge erred in charging the jury as follows: "I hold here that the consignee may receive the goods or not, at his option. * * * If a plaintiff, who is also consignee, brings his action against the railroad company, and shows that the railroad company has undertaken to transport

his property, and has transported it, and upon his demand re-
fuses to deliver it to him, he can bring his action for the whole
property, or, if it is separable, such parts of it as he demands
as in good condition.''

There are involved in the solution of the appeal here sev-
eral serious questions, and in our consideration of them it
may be necessary for us to state the law, as it has been deter-
mined in our State, bearing upon the different branches of this
contention.

The initial point is the right of action of the plaintiff. When
may it be said that a consignee has a right of action against a
common carrier for goods injured while in the custody
of the carrier? This court announced, in the case of
*Wallingford & Russell* v. *C. & G. R. R. Co.*, 26 S. C., 267,
the following as the duty of the common carrier: ''A common
carrier is bound to deliver the property, which he undertakes
to transport, at the point of discharge, safe and uninjured, at
the peril of liability, except where the injury has resulted from
some cause excepted in a contract (*other than negligence*),
which is a matter for defence, the *onus* of proving which is
upon the defendant. The plaintiff has nothing to do but to
show the injury, and the defendant becomes at once *prima facie*
liable, and remains so until he shows that said injury resulted
from an act of God, the public enemies, or from a cause from
which he had exempted himself legally by a special contract.''
It would seem to follow, therefore, that whenever an injury has
been done to goods while in the custody of the common carrier,
the consignee or true owner has the right of action against the
common carrier. The facts not controverted here seem to
establish that a considerable portion of 400 kegs of powder
were injured, both in the breaks and indentations on the kegs,
and also that some powder was lost and some injured, while in
the hands of the common carrier.

Just here it may be pertinent to state, that there is no change
in the ownership of goods when shipped from one point to an-
other through the hands of a common carrier. In other words,
the common carrier thereby acquires no ownership of the goods
shipped through his agency. All the rights of such common

carrier, so far as the owner is concerned, in such goods is a lien upon such goods for such freights and charges as shall be due at the point of destination.    The plaintiff, who shipped these 400 kegs of powder, owned them when they reached Greenville just as absolutely as he did at Augusta, before shipping them by the defendant as a common carrier.    *Ewart* v. *Kerr*, Rice, 203.    Now, then, if the defendant injured plaintiff's goods, his (plaintiff's) right of action attached the moment such goods could not be delivered at Greenville safe and uninjured.

But it is suggested that it was the duty of plaintiff to have received the whole 400 kegs of powder, paying all freight charges thereon, as soon as the common carrier announced itself ready to deliver.    To state the proposition practically, that plaintiff was bound to receive the 400 kegs of powder, although one-fourth of the number were indented or broken, with some of the powder rendered useless by reason of rain or other dampness, paying the freight upon such property, and "bill the railroad for the damage, if any."    This proposition suggests another difficulty to be considered, namely, that while a consignee of property, injured in the hands of a common carrier, has a right of action against such common carrier, yet care must be taken to show, by the allegations of the complaint, what particular form the plaintiff elects to adopt as the basis for his relief.    Apt illustrations of the necessity for this line of action in the pleading may be furnished in this way: Suppose the injury set forth by the complaint in its allegations should only embrace damages resulting from a diminution in the quantity received by the consignee; or, suppose the injury, complained upon by the allegations, should be confined to damages resulting from the delay in the delivery of the articles shipped; or, suppose the allegations of complaint asked for damages for a conversion of the goods of the shipper by the common carrier.    In each of the instances the court would apply the remedy logically and legally applicable to the cause of action adopted by the plaintiff.    *Shaw & Austin* v. *S. C. Railroad Company*, 5 Rich., 462; *Nettles* v. *S. C. Railroad Company*, 7 *Id.*, 190; *Ewart* v. *Kerr*, 2 McMull., 141.

In the case at bar, the plaintiff, by the allegations of his

complaint, in his first cause of action, has elected a form of action assimilating that of trover under the old practice. What are the requisites to such an action? Right of property and right of possession of personal property in the plaintiff, and a conversion thereof by the defendant. Does not the complaint here contain all these? It seems to us that it does. Now, this is sufficient for the complaint, but the answer denies the conversion; it insists that it has been, and is now, ready to deliver the property in question to the plaintiff, if he will pay the freight. It is very certain, that if the plaintiff really owes the freight, he cannot maintain his right to relief in this form; but he insists that he owes the defendant no freight, because the injury wrought to his property while the same was in the care of the defendant as a common carrier, is far greater than any freight charges.

This court is relieved of an extended consideration of these propositions of law, because this precise point was considered by the Court of Appeals years ago in the case of *Ewart* v. *Kerr*, Rice, 203, and 2 McMull., 141; and in that case it was decided by a divided court, that if the property of the plaintiff was damaged, while in the care of the common carrier, to a greater extent than the bill for freight, the lien of the latter was extinguished, and the consignee not only had the right to demand the property of the carrier without payment of freight charges, but that such retention by the common carrier after demand made, amounted to a conversion, and that an action for trover would lie. It must be observed, that in order for the principles established in the case of *Ewart* v. *Kerr*, *supra*, to apply, the damage to the property, while in the hands of the common carrier, must be equal to or greater than the freight charges. There was no evidence establishing this fact in the case at bar, and the charge of the Circuit Judge, in response to the requests to charge of the defendant, appellant, failed to place this essential element before the jury. This was a fatal error, even if we uphold the application of the conversion of the property by the common carrier, established by its refusal to deliver the property if part of the consignment is injured, unless the whole freight charges be paid.

But we feel constrained to observe, that the more recent decisions of the court of last resort in this State, notably the cases of *Shaw* v. *R. R. Co.*, 5 Rich., 462, and *Nettles* v. *Railroad Co.*, 7 *Id.*, 190, seem very clearly to point out the course of duty in a consignee, whose property is injured while in the control of the common carrier, to be to pay all freight charges, and then sue the carrier for the injury done him.   As a practical result, we cannot see how the character and extent of injuries to goods can be correctly ascertained by the consignee while the same are in the hands of the common carrier, and hence the consignee is without the proof requisite to establish his claim for such damages.   In order to know how much his property is injured, he should have it in his possession or control. Another difficulty must be apparent.   It is, that when goods are shipped in large quantities, and only a small proportion is injured, if we should adopt the views of the Circuit Judge, it would be in the power of every such consignee to refuse to pay the freight, then bring an action against the common carrier for the goods, *as valued at the place of destination*, and, by a recovery therefor, the common carrier would have paid him a full profit on his purchase, and the common carrier becomes a retail merchant, to save itself harmless in the transaction.   We cannot view any such result with either complacency or approval.

A new trial would be necessary here upon an additional ground.   The damages alleged by the conversion of the 400 kegs of powder was $860.   The verdict was for that exact sum.   The respondent in argument insists that this could be accounted for by the jury balancing the amount due for freight, $137, with the amount due as interest. No claim is set up for interest in the complaint, no testimony relates to interest, and there is no direction in the charge of the Circuit Judge in relation to interest.   Such being the facts in the "Case," on this point the judgment is erroneous.

The judgment of this court is, that the judgment of the Circuit Court be reversed, and that the cause be remanded to the Circuit Court for a new trial.