THE MISSOURI PACIFIC RAILWAY COMPANY V. THE
PERU-VAN ZANDT IMPLEMENT COMPANY.

No. 14,537.    (85 Pac. 408.)

SYLLABUS BY THE COURT.

1. RAILROADS—*Conversion of Goods Consigned to Commission
Agent—Action by Consignee.* When property has been con-
signed by the general owner to an agent who has a special in-
terest therein as factor or commission agent, and the goods
so consigned are negligently delayed in transit and converted
by the carrier, so that sales thereof previously made by the
consignee are canceled and lost, such consignee may main-
tain an action in its own name against the carrier for the
recovery of damages on account of such lost commission, and
also for the value of the property converted.

2. ——— *Negligent Delay in Delivery—Damages in Excess of
Freight—Consignee's Rights.* When a common carrier neg-
ligently delays the delivery of goods, so that the damages oc-
casioned by such delay exceed the amount of freight due for
the transportation of such goods, the consignee may right-
fully demand the delivery of the goods without payment of
the freight, and a refusal by the carrier to surrender pos-
session upon such demand is wrongful, and amounts to a
conversion.

3. ——— *Presumption as to Knowledge of the Effect of Non-
delivery.* Common carriers are supposed to take notice of
such natural events as are familiar to ordinary people. They
will be held to a knowledge of seed-time and harvest, and the
general customs relating thereto in the territory where they
do business. A common carrier that, on June 12, 1903, re-
ceived at the factory in Port Huron, Mich., thrashing-ma-
chines consigned to an implement dealer of Hutchinson, Kan.,
to be delivered at Larned, Kan., with stop-over to unload
some of the consignment at Seward, Kan., will be deemed to
have had notice that such machines were for immediate sale,
if not already sold, and that a delay of delivery until the en-
tire thrashing season passed would defeat the purpose of the
shipment.

4. ——— *Conversion — Measure of Damages.* An action was
brought against a common carrier by the consignee of thrash-
ing-machines. At the trial it appeared that the plaintiff had
sold the machines as agent for the consignor, and was entitled
to receive out of the proceeds of the sale a commission of forty
per cent. of the price for which the sale was made. It also

appeared that the carrier negligently delayed the delivery of the goods until the sales were, for that reason, canceled, and the commission thereby lost. It further appeared that the carrier converted the machinery to its own use. The action was brought to recover for the loss of commission and the value of the property converted. *Held,* that the price for which the sale had been made was the proper measure of damages in such action.

Error from Reno district court; PETER J. GALLE, judge. First opinion filed March 10, 1906. Affirmed. Rehearing granted April 6, 1906. Second opinion filed October 6, 1906. Reaffirmed.

#### STATEMENT.

THE Port Huron Engine and Thrasher Company, of Port Huron, Mich., manufactures thrashing-machines and sells them throughout the country through local agents. Its agent at Hutchinson, Kan., is the Peru-Van Zandt Implement Company (defendant in error). By the contract of agency it is the duty of the Peru-Van Zandt company to advertise, introduce and sell the machines to those desiring to purchase, and when a sale is made an order is taken from the purchaser, in writing, directing the Port Huron company to ship the machinery desired, stating price, manner of payment, and other particulars constituting the conditions of sale, which order is signed by the purchaser and delivered to the local agent. This order is forwarded to the Port Huron company by the agent making the sale. Upon this order the machinery is shipped by the designated route, consigned to the local agent. It is the duty of the agent to receive the machinery and hold possession thereof until payment is made or secured as stipulated in the order of the buyer. In completing the sale the agent takes in payment cash, notes, mortgages, or other security, as directed, but delivers the machinery only after the sale has been approved by the Port Huron company. Until such approval and de-

livery the title to the machinery does not pass from the seller.

The Peru-Van Zandt company receives for its services in making such sales a commission of forty per cent. of the selling price. If any machinery is taken back, or returned, the local agent takes charge thereof, and may resell it and receive a commission therefor.

The local agent pays all expenses incident to the sales made. The buyer pays the freight, in addition to the price stipulated for the machinery. Where payment is made by the purchaser with notes, collection is made by the agents; and out of the proceeds the commission is deducted. The commission always comes out of the proceeds of each sale when collected. The Peru-Van Zandt company under this employment sold two machines for the aggregate sum of $920, and took from the purchasers written orders therefor, which were duly forwarded to the Port Huron company. Upon receipt of the orders the machines were shipped over the road of the plaintiff in error, consigned to the Peru-Van Zandt Implement Company, at Larned, Kan., with stop-over to unload one of them at Seward, Kan., being the points where the purchasers lived. The bill of lading contained nothing to indicate the relation existing between the consignor (the Port Huron company) and the consignee; whether that of vendor and vendee, or principal and agent.

The machines were shipped June 12, 1903, and in ordinary course would have arrived at their destination within ten days, but on account of negligent delays they did not arrive until some time in the month of August, long after the thrashing season had closed and the sale contracts had for that reason been canceled. By the contract of shipment the freight was payable before delivery of the machinery to the consignee. The consignee declined to pay the freight, claiming that the damages suffered on account of delay far exceeded the amount of the freight bill. The carrier refused to deliver the goods until the freight

was paid. Thereupon the defendant in error demanded that the machinery be delivered to it without payment of freight, and upon refusal commenced 'this action. The demand was made in the name of the Port Huron company, by the Peru-Van Zandt company, as agent. The petition alleged that the plaintiff was the agent and factor of the Port Huron company, and averred the facts constituting their relationship substantially as hereinbefore set forth. In the first cause of action the plaintiff asked judgment for the amount of commission lost by it, and in the second cause of action demanded judgment for the value of the machines. The carrier retained, and still keeps, possession of the machines. The plaintiff recovered judgment for the price for which the machines were sold. The defendant brings the case here for review.

*J. H. Richards,* and *C. E. Benton,* for plaintiff in error; *Prigg & Williams,* of counsel.

*George A. Vandeveer,* and *F. L. Martin,* for defendant in error.

The opinion of the court was delivered by

GRAVES, J.: Many assignments of error have been presented, but they are all substantially covered by these three: (1) It is insisted that the plaintiff has no interest in the machinery in controversy, and, therefore, cannot maintain an action for its conversion; (2) that the proper measure of damages in case of a recovery is the difference between the market value of the machinery at the time and place of delivery and the market value thereof when it in fact arrived at such place; (3) that damages for loss of commission cannot be recovered, because a sale of the property was not within the contemplation of the parties when the shipment was made.

Concerning the first proposition, there is considerable confusion among the authorities as to whether

the consignee or consignor is the proper party plaintiff in an action against a carrier, but the rule that an action for the conversion of goods must be brought by the owner or one having a beneficial interest in the property converted seems to be fairly well established. (Hutch. Carr., 2d ed., §§ 731-734; 6 Cyc. 510; Wood's Browne, Carr. § 599.) The consignee is always presumed to possess the necessary ownership, until the contrary is shown. (Ray, Carr. of Freight, 1006; *Griffith v. Ingledew,* 6 S. & R. [Pa.] 429, 9 Am. Dec. 444; *Smith v. Lewis,* 3 B. Mon. [Ky.] 229; *Arbuckle v. Thompson,* 37 Pa. St. 170; *The Pennsylvania Company v. Poor,* 103 Ind. 553, 3 N. E. 253.) The ownership need not be extensive, and an agent, factor, broker, bailee or other person having rights in the property to be protected may maintain an action, and recover both for himself and the general owner. (*Chamberlain v. West,* 37 Minn. 54, 33 N. W. 114; *Harrington v. King,* 121 Mass. 269; *Finn v. Western Railroad Corporation,* 112 Mass. 524, 17 Am. Rep. 128; *Green v. Clarke,* 12 N. Y. 343; *Bost. and Me. R. R. Co. v. Warrior Mower Co.,* 76 Me. 251.) We think the plaintiff in this case had sufficient interest in the property to enable it to maintain this action. In the case of *Bost. and Me. R. R. Co. v. Warrior Mower Co., supra,* a case very similar to this, the court said:

"Ordinarily when a plaintiff sustains his action it is presumed that the whole amount of damages recovered will belong to him. In fact, the injury to him or to his property is the measure of the damages. But while this is the general rule there are exceptions, not to the extent or measure of damages, but to the interest the plaintiff may have in them. It is true that an action cannot be maintained unless the plaintiff has an interest in the subject-matter of the suit, but he may do so when he is not interested to the full extent of the damages to be recovered. Such are the familiar cases of injury to property in which there is a general and special owner, as bailor and bailee, consignor and consignee, principal and factor. In such cases the action may not be brought in the names of the two jointly,

but may in the name of either. In the action now in question the subject-matter was mowing-machines and parts of mowing-machines. The damage claimed rests upon a neglect of the carrier by which the property was improperly delayed in its transit. The facts show that the title to the property was in the mower company; that it had consigned and forwarded the machines to Dunham by virtue of a contract under which Dunham was to sell them for a specified commission and account to the company for them at a specified price. Dunham was also to pay the freight. This contract, while it did not change the title in the machines and pieces, gave Dunham such a special property in them as to enable him to maintain the action in his own name, and the consignment and forwarding [of] the property, thus setting it apart and putting it into the hands of the carrier for his benefit, gave him a constructive possession sufficient for that purpose; and as the injury was the result of a single wrongful act to the whole property the damage could not be apportioned but must all be recovered in that one action, the judgment in which would be conclusive against any suit by the general owner. . . . Hence Dunham, in his suit, is entitled to recover not only his own damages but such as have accrued to the mower company as general owners. The measure of damages as held by the court in that case can be applicable upon no other theory. If, then, Dunham should receive the whole damage recoverable in his suit, he would be entitled to retain his own share, and the balance he would hold as trustee for the mower company." (Pages 259, 260.)

In the case of *Southern Express Company v. Armstead,* 50 Ala. 350, it was said:

"The consignee of goods has a right to sue for their loss by the carrier, notwithstanding another party may be the owner of them. The obligation is to deliver to him. Generally the property vests in him by the mere delivery to the carrier. Although the absolute or general owner of personal property may support an action for any injury thereto, if he have the right of immediate possession, this does not necessarily devest the right of the consignee to sue, notwithstanding he has never had the actual possession." (Page 352.)

A judgment in favor of the plaintiff can work no

harm, as it would be a bar to an action for the same injury by the Port Huron company. (*White et al. v. Bascom et al.,* 28 Vt. 268; *Green v. Clarke,* 12 N. Y. 343; *Harker, et al., v. Dement,* 9 Gill [Md.] 7, 52 Am. Dec. 670; *Little v. Fossett,* 34 Me. 545, 56 Am. Dec. 671.) The plaintiff holds in trust for the Port Huron company whatever remains of the amount recovered, after payment of its commission. (*Chamberlain v. West,* 37 Minn. 54, 33 N. W. 114; *Finn v. Western Railroad Corporation,* 112 Mass. 524, 17 Am. Rep. 128; *White et al. v. Bascom et al., supra; Little v. Fossett, supra.*)

A consignee has the right to withhold a freight bill, when its damages exceed that amount, and in such a case the refusal of the carrier to deliver the goods until the freight is paid amounts to a conversion. (5 A. & E. Encycl. of L. 232; *Miami Company v. Railway Company,* 38 S. C. 78, 16 S. E. 339, 21 L. R. A. 123, 55 Am. & Eng. Rld. Cas. 688; 6 Cyc. 497; *Railway Co. v. Goodholm,* 61 Kan. 758, 60 Pac. 1066.) The measure of damages is compensation for the injury sustained. An amount which will place the injured party in the same condition he would have occupied if no loss had occurred will satisfy this requirement. If in this case the machinery had been delivered according to contract, the price for which it had been sold would have been realized. Out of this amount the commission due the plaintiff would have been deducted. The freight would have been paid by the purchasers of the machinery. The selling price at the place of delivery seems, therefore, to be the true measure of damages. We think the amount recovered in the district court fairly compensates all parties for the losses sustained. Out of this amount the plaintiff will retain a sum equal to the commission lost, and must account to the Port Huron company for the remainder.

Finally, it is insisted that a sale of the machinery was not within the contemplation of the parties at the time of shipment, and, therefore, the commission is

not a proper element of damages. A railroad company must be held to know facts familiar to ordinary people. It is fair to assume that a carrier of thrashing-machines knows what they are used for, and that the only purpose implement dealers have in shipping such property into the heart of a great wheat country is to sell it. When a shipment of thrashing-machines is made in June of any year, the inference follows that, if they are not already sold, an immediate sale is intended. We think, therefore, that the loss of a commission is not so remote as to be excluded as an element of damages in this case.

The general rule that damages caused by the loss of a sale not within the contemplation of the parties cannot be recovered has no application to the facts here shown. No error appearing, the judgment of the district court is affirmed.

All the Justices concurring.

OPINION ON REHEARING.
(87 Pac. 80.)

SYLLABUS BY THE COURT.

RAILROADS—*Injury to Goods in Transit—Carrier's Lien—Conversion.* Where a common carrier becomes liable to the consignee of goods for injury to property while in transit, and the amount of the damages occasioned by such injury equals or exceeds the freight bill on the damaged goods, the lien of the carrier is thereby extinguished, and the consignee is entitled to the possession of such goods without payment of freight; and in such a case the refusal of the carrier to deliver the goods to the consignee upon demand constitutes a conversion.

The opinion of the court was delivered by

GRAVES, J.: This case was decided at the March, 1906, sitting of this court. A rehearing was granted upon the proposition of law stated in the second paragraph of the syllabus, which reads:

"When a common carrier negligently delays the de-

livery of goods, so that the damages occasioned by such delay exceed the amount of freight due for the transportation of such goods, the consignee may rightfully demand the delivery of the goods without payment of the freight, and a refusal by the carrier to surrender possession upon such demand is wrongful, and amounts to a conversion."   (Ante, p. 295.)

The plaintiff in error urgently objects to this statement of the law, and insists that it is opposed to both reason and authority.  This particular point received very little attention at the first argument of the case, and very few cases directly in point have since been cited by either party.  Under some of the older cases, especially in England, the consignee was required first to pay the freight and bring an action for damages afterward.  This rule obtained because of the law then existing concerning the forms of action in which a set-off for unliquidated damages might be litigated.   Under the modern procedure of this country, however, and especially in this state, where the policy is to litigate every controversy between the parties in the same suit, and thereby avoid circuity and multiplicity of actions, this class of cases cannot be controlling.   (See 25 A.. & E. Encycl. of L. 484, subject of "Set-off, Recoupment, and Counter-claim.")

Apparently the plaintiff in error relies upon the case of *Miami Company v. Railway Company*, 38 S. C. 78, 16 S. E. 339, which may also be found in 55 Am. & Eng. Rld. Cas. 688 and 21 L. R. A. 123, and the cases therein cited.  This case was cited in the former opinion in support of the proposition in question.  The citation was made upon the assumption that the syllabus of the case stated the law as given in the opinion, but on further examination they do not seem to be alike. We have since carefully examined that case, and find that the only question really decided by it is that the evidence in the case did not justify the instructions given.

The trial court in that case adopted the law as

stated by this court, and to which the plaintiff in error objects. In doing so it followed *Ewarts v. Kerr,* 1 Rice (S. C.) 203, which had been affirmed in 2 McMull. (S. C.) 141. Neither of these cases has been modified or reversed, but so far as we have been able to ascertain they still stand as the law of South Carolina. The supreme court did not reverse the trial court because the law given was erroneous, but for the reason that, if correct, it did not apply to the facts of that case, as the evidence did not show whether the damages claimed equaled or exceeded the freight bill. The court made the suggestion, apparently for the future guidance of the trial court, that the rule of law stated in the cases of *Shaw & Austin v. S. C. Railroad Company,* 5 Rich. Law (S. C.) 462, 27 Am. Dec. 768, and *Nettles v. Railroad Company,* 7 Rich. Law (S. C.) 190, 62 Am. Dec. 409, was more applicable to the facts of that case than the one followed. That suggestion is not inconsistent with the former cases followed by the trial court, nor with the rule stated by this court in the paragraph of the syllabus under consideration.

In the case of *Shaw & Austin v. S. C. Railroad Company, supra,* the goods shipped consisted of ten barrels of molasses, two of which leaked during transit. The consignee accepted eight barrels, but refused to accept the two that were leaking, and sued the carrier for the value of two full barrels. It was held that the plaintiff should have received all of the barrels and sued for the value of the amount of loss by leakage.

In the case of *Nettles v. Railroad Company, supra,* the carrier tendered the goods to the consignee, who refused to accept them, and sued for the value of the entire shipment. It was held that he ought to have received the goods and sued for the difference in their value when tendered and when they ought to have been delivered. It is true the damages were caused by delay in transit, but no question as to payment of freight was considered. The discussion related to the

proper measure of damages.  The case cannot, there-
fore, be considered of any weight as an authority here.

In the case of *Miami Company v. Railway Company,*
38 S. C. 78, 16 S. E. 339, the goods shipped consisted
of kegs of powder, only a few of which were injured.
The consignee refused to receive any of them and pay
the freight, but sued in trover for the value of all.. It
will be observed that the damages complained of in
that case were not the result of delay in delivery, but
because of a direct injury to a part of the goods.  In
such a case it would not be unreasonable to say that
when freight is shipped in bales, barrels, kegs or other
forms where the injured parcels can be readily sep-
arated from those which are uninjured without affect-
ing the value of the shipment as a whole, the rule as
to whether the consignee would be entitled to the pos-
session of the entire shipment without payment of
freight might be different from that which should be
applied when the entire shipment consists of a single
machine, which cannot be separated without destroying
its value.  We conclude, therefore, that the case of
*Miami Company v. Railway Company* does not decide
the question here in controversy either way.  The facts
in the two cases are dissimilar.

The other cases cited by the plaintiff in error relate
to what constitutes a conversion, and to the proper
measure of damages where goods are injured in transit
by the negligence of the carrier.

In argument the plaintiff in error objected to the
rule stated by this court because of the embarrass-
ments which might be imposed upon carriers by dis-
satisfied shippers.  But the rule contended for by it
would, in our view, enable carriers to impose much
greater embarrassment upon shippers.  A rule which
would require a shipper to pay his debt to a carrier
who owes him a greater sum does not seem to be a just
and fair way to settle a controversy.

20—73 KAN.

It is conceded by the plaintiff in error that in an action by the carrier for the freight, after the goods had been delivered to the consignee, damages to the goods might be collected, and that replevin would lie against the carrier for the goods without payment of the freight if the damages equaled or exceeded the freight bill, but it insists that an action for the value of an entire shipment will only lie when there has been a conversion, which has not been shown here.

On the other hand, the defendant in error claims that both reason and authority sustain the law as stated in the paragraph of the syllabus objected to by the plaintiff in error. It argues that the right of the carrier to possession rests upon its lien for freight; that where the carrier becomes liable to the consignee, on account of damages to the property while in transit, in a sum equal to or greater than the freight bill, the lien thereby becomes extinguished, because "where there is no debt, there can be no lien." It argues further that under such circumstances the right of possession is in the consignee, and a refusal of the carrier to deliver upon demand constitutes conversion. In support of these contentions it cites the case of *Dyer v. Grand Trunk Railway Company*, 42 Vt. 441, 1 Am. Rep. 350. That was an action of replevin, but the court said, in substance, that when the damages to the goods equal the freight bill one debt offsets the other, and the lien of the carrier vanishes, leaving the right of possession in the owner. In the case of *Moran Bros. Co. v. Northern Pacific R. R. Co.*, 19 Wash. 266, 53 Pac. 49, the supreme court of Washington said:

."If a carrier has negligently delayed delivery of goods, or otherwise subjected itself to liability for damages in respect to the property carried, equal to or greater than the amount of the freight, the consignee may maintain replevin without a tender; and the claim for freight and the claim for damages may be adjudicated in the replevin suit." (Syllabus.)

Section 515 of the second edition of Cobbey on Replevin reads:

"The right of a carrier to retain property until its charges for carriage are discharged rests upon the performance of the contract of carriage upon its part. If it has negligently delayed the delivery of the property at its destination, or otherwise subjected itself to liability for damages to the consignee in respect to the property carried, that would disentitle it to the extent of such liability to demand and recover freight; and if the damage should exceed the amount of the freight to which it would otherwise be entitled, of course it would not be entitled to demand and recover anything for the carriage of the property. And in such cases the owner or consignee may maintain replevin without a tender, and the claim for freight by the defendant, and the claim for damage by the plaintiff, at least to the extent of the freight charge, may be adjudicated in the replevin suit."

The case of *Charles E. Bancroft, plaintiff in error, v. Wm. E. Peters, defendant in error,* 4 Mich. 619, is to the same effect. In the case of *Marsh v. Union Pacific Ry. Co.,* 3 McCr. (U. S.) 236, 9 Fed. 873, 6 Am. & Eng. Rld. Cas. 359, Judge Hallett, of the United States district court for Colorado, held that trover would lie for the value of freight held by a carrier under a lien which did not exist. In volume 1 of Jones on Liens, second edition, section 331, it is said :

"The carrier's lien may be defeated by an injury to the goods carried, happening by the carrier's fault, to an amount larger than his charge for freight. His right to freight, and to detain the goods for its payment, results from his performance of the contract to carry the goods. If he fails to carry the goods and have them ready for delivery, he cannot claim his freight." (See, also, 8 A. & E. Encycl. of L., 1st ed., 978.)

The proposition seems reasonable that, when a carrier's lien is gone, subsequent retention of possession of freight against the wish of the owner is wrongful, and the owner may thereafter sue for the possession thereof in replevin or for the value as upon conversion.

We understand the general rule to be that a refusal to deliver the possession of personal property upon demand by an owner who has the right to possession amounts to a conversion, and the owner may sue for the value at once. (28 A. & E. Encycl. of L. 705; *Roberts v. Yarboro,* 41 Tex. 449; *Briggs v. Haycock,* 63 Cal. 343; *Nor. Trans. Co. v. Sellick,* 52 Ill. 249; *Singer Manuf. Co. v. King,* 14 R. I. 511.)

We conclude that the rule stated in the syllabus is more in harmony with modern procedure, and more in consonance with fairness between the parties and less liable to lead to embarrassments, than the rule contended for by the plaintiff in error, and therefore do not feel inclined to make any change therein.

All the Justices concurring.