## HIRAM HUNT *versus* ELIAS HASKELL.

Where a common carrier by sea engages to deliver goods at a place named for a stipulated sum as freight, and the owner is willing to receive his goods before they arrive at the place appointed in the bill of lading, and does receive a part of them, the carrier is entitled to a *pro rata* freight.

A common carrier by sea has by the law merchant a lien on goods carried by him for the payment of their freight; but he has no right to cause a sale to be made thereof, of his own mere motion, for the payment of the freight.

Where goods are illegally sold for the discharge of a lien for the freight thereof, and the owner afterwards obtains the possession of them through one who had made the purchase, he is entitled to recover of the seller, in an action of trover, not the value of the goods sold, but merely whatever damages and loss he sustained in regaining possession of his goods, over and above what was fairly due to the defendant.

TROVER for twenty-five boxes containing one hundred and fifty clocks.

This case was opened to the jury, and taken from them by consent of parties, after the evidence was out, and submitted upon the evidence to the decision of the Court. If the action was not maintainable, the plaintiff was to become nonsuit; and if it was, the defendant was to be defaulted, and the damages were to be assessed by the Court upon principles of law.

The facts shown by the evidence appear in the opinion of the Court. The bill of lading referred to was dated Dec. 4, 1841, and recited that there were "shipped in good order and condition by G. H. Chapin, on board the good schooner called the Mirror, whereof Elias Haskell is master for this present voyage, now lying in the port of Boston and bound for Bangor;" the clocks in question and other articles, "to be delivered in like good order and condition at the aforesaid port of Bangor, the danger of the seas only excepted, unto H. Hunt or to assigns, he or they paying freight for said goods at 8 cents per foot and Boston wharfage, without primage or average, and expenses, sixty-seven dollars." This was signed by the defendant.

*Rowe,* for the plaintiff, said that the bill of lading show, that the goods belonged to the plaintiff, and that the defendant

engaged to deliver the same at Bangor. The case shows, that the articles were not delivered at Bangor, but sold at Frankfort by the defendant. To constitute a defence, he must show, that the freight was due, and that the law gave him the right, by his own authority, to sell the plaintiff's goods at auction for the payment of the freight.

The freight has never been earned, as the goods were never delivered at the place appointed, and no cause appearing to prevent it. If the defendant was under the necessity of carrying them a few miles upon the ice, it was no more than he should have expected, when he made the contract. He is not entitled to have freight *pro rata itineris.* 7 T. R. 381; 10 East, 378 and 526; 2 Campb. 466; 1 Dodson, 217; 1 Peters Adm. R. 123; 9 Johns. R. 186; 6 Cowen, 504; 3 Binn. 437; 7 Cranch, 388; 12 Wheat. 383; 5 Mass. R. 252; 6 Mass. R. 422; 3 Pick. 20.

But if the defendant was entitled to freight, he has no right to sell the property for the payment thereof.

The true measure of damages, it is believed, is the value of the property at the time of the conversion. But if this be not correct, then the plaintiff should be fully compensated for his expenses and trouble in obtaining his goods. *Greenfield Bank* v. *Leavitt,* 17 Pick. 1.

*Hobbs,* for the defendant, contended that the defendant had a lien upon the property for the payment of the freight as a common carrier; and a lien, also, as factor or agent of the plaintiff, for the amount paid for him at Boston. Story's Ag. § 373, 382; Jeremy's Law of Carriers, 74. The defendant therefore should be regarded both as a common carrier, and as a factor or agent.

The defendant had the power to make the sale as a common carrier. The lien clearly exists, and this is not contested. The one adopted by the defendant is the only mode of making the lien of any value, the equity powers of this Court not extending to a case like this, unless, perhaps, going into the admiralty court of the United States, an inconvenient and expensive remedy at best. To deny this right of sale, would be virtually

a denial of any benefit from an acknowledged lien. The necessity of the case is sufficient to sanction this course. *Chandler* v. *Belden*, 18 Johns. R. 157.

He has a power to sell as factor or agent. 14 Peters, 479; 2 Kent, 642.

The defendant is entitled to freight on the goods *pro rata itineris*, for several reasons. The goods were to be carried in a vessel by water to Bangor; and if the plaintiff does not choose to accept the articles at Frankfort, the defendant had until spring to deliver the goods; the plaintiff accepted and received a part of the goods at Frankfort; and the tender made by the plaintiff was an admission of an existing debt, and so a waiver of delivery at Bangor.

If the plaintiff is entitled to damages, the amount should be merely the loss actually sustained. He has received all his goods, and ought not to recover of the defendant, in any view of the case, but the five dollars he paid to his agent who bid them off for him, and the auctioneer's fees. Esp. N. P. 567; 2 Saund. Pl. & Ev. 420.

The opinion of the Court was prepared by

WHITMAN C. J. — The defence, as exhibited, cannot be sustained. The defendant was a packet master; and, as such, undertook to bring, for the plaintiff, certain boxes of merchandize, of which those named in the declaration were a part, in his packet, from Boston to Bangor; and in January, 1842, arrived with them at Frankfort, which, owing to the ice in Penobscot river, was as near as he could convey them, in his vessel, to the port of destination; and there landed them, and demanded his freight, and advances, which he had made on account of them in Boston. The plaintiff, thinking he demanded too much, tendered what he admitted to be due; and demanded his goods. The defendant refused to receive the amount so tendered, and caused the quantity sued for to be sold at auction for the amount claimed by him, and the expenses of sale. The plaintiff thereupon instituted this action of trover to recover the value thereof.

It is very clear that the defendant had no right to cause the sale to be made of his own mere motion, and without the intervention of legal process for the purpose. The law merchant recognizes no such right on the part of carriers by sea, under a common bill of lading, such as the defendant had signed in this instance. If the plaintiff was willing to receive his goods at Frankfort, which by his tender and demand of them there, it seems he was, the defendant might well insist on a *pro rata* freight, and on detaining the goods until it was paid; but a simple detention only, in the first instance, was all that could be insisted on.

It is urged, that the defendant was without a convenient remedy, unless the course he pursued can be sanctioned; that the Courts of this State, having no jurisdiction in equity in such cases, the only resort, if the defendant could not sell as he did in this case, must be to the United States Court of admiralty, which would be extremely inconvenient; and, therefore, that it is highly proper to uphold the proceeding adopted by the defendant. But it is not for Courts to alter an established law. It is the duty of Courts, as has often been remarked, to expound and apply the law, as it may be found established and not to legislate.

But it appears that the plaintiff attended the auction, and, through the intervention of a friend, regained possession of his goods, by paying the auction price, and five dollars more to his friend; and it is not shown that, when so received, they were not in good order. This must be allowed to go in diminution of the damages, which the plaintiff would otherwise be entitled to recover. Whatever damages he sustained, over and above what was fairly due to the defendant, in regaining possession of his goods, he is entitled to have allowed him. The five dollars paid to his friend for bidding off the goods; five dollars and thirty-one cents for auctioneer's fees; five dollars for his own time in endeavoring to regain possession of his goods, and six dollars, being the difference between the freight demanded, and the amount tendered, with interest on these sums, making twenty-two dollars and fifty cents, the plaintiff must have judg-

ment for. *Murray* v. *Burling*, 10 Johns. R. 172; *Bank* v. *Leavitt*, 17 Pick. 1.

He cannot have judgment for the value of the goods; for he was never divested of his property in them. Neither the acts of the defendant, nor the sale at auction, nor being in market overt, there being none such in this country, as there is in England, could effect a change in the right of property. The plaintiff, if his tender was sufficient, might have maintained an action of replevin for his goods, against the defendant, or against a purchaser at the auction sale, as well as trover against the defendant; and the latter action is maintainable only upon the ground, that the defendant had done, in reference to the goods, what was unauthorized by law.

*Defendant defaulted for* $22,50.