## H. T. Dodson v. R. H. Cooper.

1. GOODS—*Unlawful Seizure—Measure of Damages.* Where it appears in an action brought by the plaintiff, as the owner of a stock of merchandise, to recover damages against a sheriff who has levied upon and taken possession of the stock in good faith, as the property of a third party, that the plaintiff has purchased back the goods from a stranger, who bid them off at the sheriff's sale, the measure of his damages is the sum thus paid, (not greater than the market value;) and in addition, such special damages as he has suffered from the unlawful taking, in the way of injury, depreciation, or otherwise, as may be proved.

2. FRAUDULENT SALE—*Notice to Purchaser—Reimbursement.* Where an insolvent and failing merchant makes a sale of all his goods and merchandise for the purpose of defrauding his creditors, and the purchaser thereof has no actual or constructive notice of the fraud at the time of his purchase, and executes a bond to the failing merchant to convey certain real estate as part of the purchase-price of the goods, but subsequently, and before the execution of the conveyance recited in the bond, has actual notice of the fraud, *held*, that such purchaser is not entitled to reimbursement, as against attaching creditors, for the real estate actually conveyed to the fraudulent insolvent, after notice.

*Error from Butler District Court.*

ON December 18, 1884, *R. H. Cooper* brought his action against *H. T. Dodson* for ten thousand dollars damages for the wrongful conversion of a general stock of merchandise, consisting of hats, caps, boots, shoes, carpets, notions, etc., of the value of six thousand dollars, which the plaintiff alleged he was the owner of on November 27, 1884, at the time the same was seized and taken possession of by the defendant. The answer alleged, first, a general denial; second, that at the time of the alleged conversion Dodson was the sheriff of Butler county, and that on November 27, 1884, certain writs of attachment came into his hands in favor of the following attaching creditors of one Horace Blakely, to wit: Bates, Reed & Cooley, Lockwood, Englehart & Co., H. T. Simmons & Morse, and J. V. Farwell & Co., and that the said Dodson levied the same upon the goods, wares and merchandise de-

scribed in plaintiff's petition, all of which was the property of said Horace Blakely. The answer further alleged that R. H. Cooper and Blakely entered into a conspiracy to make a sham and pretended sale of the goods to Cooper to defeat the claims of creditors, and especially the claims of the attaching creditors above mentioned. To this a reply containing a general denial was filed. Subsequently an amendment to the second cause of defense was made. To this a demurrer was filed, which the court sustained. Trial at the September Term, 1885. The jury returned a general verdict for the plaintiff, and assessed the amount of his recovery at $5,336.18. The jury also made the following special findings of fact:

"1. Was the sale of the stock of goods by Blakely to Cooper made with the intent on the part of said Blakely of defrauding his creditors, or hindering or delaying them in the collection of their debts? *Ans:* Yes, in our judgment, he did.

"2. If the above question is answered yes, then did Cooper have actual notice of such intention on the part of Blakely? A. No.

"3. What time of the day or night was the sale consummated? A. Night of November 25, 1884, between the hours of nine and twelve o'clock.

"4. Were the facts and circumstances surrounding the sale such as to put a prudent man upon inquiry as to the object Blakely had in making the sale? A. No.

"5. On what day was the trade finally consummated? A. November 25, 1884."

"9. Did Cooper, before buying the goods from Blakely, make inquiry of any person or persons other than Blakely to ascertain whether Blakely was making the sale to defraud, delay or defeat his creditors? A. No.

"10. Was an inventory of the stock of goods taken by Cooper before the sale was made? A. No.

"11. Was the sale made in the usual and ordinary course of business? A. Not in the majority of cases.

"12. Was the sale made in an unusual manner, and at an unusual hour? A. It was made in an unusual manner, but not at an unusual hour.

"13. At the time of the levy of the respective attachments of Bates, Reed & Cooley, and Lockwood, Englehart & Co., by the defendant, had the bond for a deed which has been of-

fered in evidence been delivered to Horace Blakely? A. To the best of our recollection, it had been.

"14. At the time the attachments were levied on the stock, on November 27, 1884, had Cooper given Blakely deeds for the land or town property which was to be part of the consideration? A. To the best of our recollection, he had not.

"15. At the time of the trade, what was the amount of the mortgage on the northeast quarter of section thirty-five, township twenty-five, range six, in Butler county, Kansas? A. Three hundred dollars.

"16. What was the value of the interest in said land which Blakely received from said Cooper? A. Six hundred and sixty dollars.

"17. What was the amount of the mortgage on southwest quarter section ten, township twenty-three, range seven, at the time of the trade between Cooper and Blakely? A. Seven hundred dollars.

"18. What was the market value of the house and lot in El Dorado, Kansas, which Blakely received from Cooper in said trade? A. Five hundred dollars.

"19. Did Cooper pay Blakely any money at the time of the trade? A. He did, in the shape of a bank check.

"20. If last question is answered yes, state when said payment was made, and how much was received by Blakely from Cooper? A. On the night of November 25th, 1884, two thousand dollars, check. He also received a note of five hundred dollars said night.

"21. What was the market value of the southwest quarter section ten, township twenty-three, range seven east, at the time of the trade between Cooper and Blakely? A. Eight hundred dollars."

The defendant filed a motion for a new trial, which was overruled, and judgment was entered upon the verdict in favor of the plaintiff and against the defendant for $5,336.18, together with all the costs. The defendant excepted, and brings the case here.

*Smith & Solomon*, for plaintiff in error; *Hamilton & Cubbison*, and *E. N. Smith*, of counsel.

*C. A. Leland*, and *L. Knowles*, for defendant in error.

The opinion of the court was delivered by

HORTON, C. J.: On November 27, 1884, writs of attachment in favor of certain creditors of Horace Blakely were placed in the hands of H. T. Dodson, sheriff of Butler county, for service. Upon that day he levied the writs on a general stock of merchandise, as the property of Blakely, but claimed to have been purchased by R. H. Cooper, in good faith and for a valuable consideration, prior to the attachments. Dodson, for the attaching creditors, contended that Cooper and Blakely entered into a conspiracy to make a pretended sale of the goods from Blakely to Cooper to defraud the creditors of Blakely. Subsequently Dodson, as sheriff, sold the stock of goods as the property of Blakely, and Cooper brought suit to recover the value thereof, alleging that they had been wrongfully seized and converted by Dodson. Judgment was rendered in favor of Cooper for $5,336.18 and costs. Upon the trial, Dodson offered to prove that Cooper bought all the goods levied upon, at the sheriff's sale for twenty-three hundred dollars, excepting those taken to satisfy the claim of Bates, Reed & Cooley, valued at nine hundred and fifty dollars and eighteen cents. This evidence was rejected. The court instructed the jury that if they found the issues for Cooper, they should assess his damages at the amount of the value of the goods at the time they were taken by Dodson.

Complaint is made of the rejection of the evidence offered, and to the giving of the instruction as to the measure of damages. We think the complaint well made. The instruction given would not have been prejudicial if Cooper had not bought back the property in controversy. (*Simpson v. Alexander*, 35 Kas. 225.) But a different rule applies in such a case as this, where the owner gets back his property after the wrongful taking or conversion. Field says:

"In an action for the conversion of property, the fact that the property has been returned to plaintiff may always be shown in mitigation of damages; and, generally, where there is a wrongful taking and the property has been redelivered to the owner or party entitled to possession of the same, the

measure of damages is the expenses necessarily incurred by reason of the tort, the value of the time required to recover it, the value of the use of the property, and the amount of the injury thereto, if any." (Law of Damages, §110.)

Sutherland says:

"Wherever the owner gets back his property after any wrongful taking or detention, the expense of procuring its return is the measure of damages, in the absence of special damages, and where the property itself has not been injured nor diminished in value. In other words, the wrongdoer is *prima facie* liable for the value of property at the time he tortiously took it, or converted it, with interest; but if it has been returned and accepted by the owner, its value when returned, or if the owner has incurred expense to recover it, then its value, less such expense, will be deducted by way of mitigation from the amount which would otherwise be the measure of damages. Where one recovers his property again which had been unlawfully taken from him, he is considered as having received it in mitigation of damages, upon the principle that he has thereby received partial compensation for the injury suffered." (Vol. 1, on Damages, 239. See also *McInroy v. Dyer*, 47 Pa. St. 118; *Ewing v. Blount*, 20 Ala. 694; *Hunt v. Haskell*, 24 Me. 339; *Sprague v. Brown*, 40 Wis. 612.)

In *Ewing v. Blount*, the action was trover for the conversion of a slave. At the time of the trial the plaintiff had recovered possession of the slave. The court said: "If the owner has regained the possession of the goods, he cannot recover their value, and is only entitled to the damages he has sustained by the wrongful deprivation of his possession, and such damages should be commensurate with the injury." (*Pierce v. Benjamin*, 14 Pick. 356; *Curtis v. Ward*, 20 Conn. 204.)

*Sprague v. Brown* was an action for the conversion of an iron safe of the value of three hundred dollars. The safe was seized upon execution and sold as the property of the execution debtors, who were not the owners thereof. The plaintiff in that case obtained the return of the safe under a purchase from a party who bought it at the sheriff's sale. It was held

1. Goods — unlawful seizure — measure of damages.

that "plaintiffs having purchased back their goods from a stranger who bid them off at the execution sale, the measure of their damages is the sum thus paid, (not greater than the market value;) in addition to which

they might have recovered any special damages suffered from the unlawful taking, if any such had been alleged and proven."

If we understand the evidence correctly, the testimony of Cooper shows that for the stock of merchandise levied upon, he paid Blakely about two thousand dollars in money, and turned over to him real estate estimated at four thousand eight hundred dollars. The jury, however, found that the value of the real estate, less the incumbrances thereon, was only twelve hundred and sixty dollars. On the date of Cooper's alleged purchase, he executed a bond to Blakely for certain real estate as part of the purchase-price of the stock of merchandise. As there was some doubt about his ability to convey this real estate, the bond was placed in escrow until November 27, 1884, when it was taken up and destroyed, and a new bond, reciting other real estate, executed and delivered to Blakely. This bond covered the real estate which was conveyed subsequently by Cooper to Blakely. The bond provided for the conveyance of the realty on or before March 25, 1885.

There is some conflict in the evidence whether the second bond was delivered to Blakely before or after Cooper had actual knowledge of the attachment proceedings. The jury found, however, that this bond was delivered prior to the levy of the attachments, but the conveyances for the land were not executed until after the stock of merchandise was levied upon, and after Cooper had actual notice of the fraud of Blakely. One of the deeds was acknowledged November 28, 1884, and the other two January 23, 1885. Even if Cooper was a *bona fide* purchaser of the stock of merchandise, yet if he did not execute the deeds for the real estate, which was a part of the consideration therefor, until after he had actual notice of the attachments, the conveyances were delivered at his peril. He cannot be protected for the value of the land, for which he gave deeds to Blakely after full notice of the fraud. The jury found that the sale of the stock of merchandise by Blakely to Cooper was with the intent on the part of Blakely to defraud his

2. Fraudulent sale — notice to purchaser — reimbursement.

creditors, and to hinder and delay them in the collection of their debts. This fraud seems to be conceded by all the parties. It is well settled that no one but a purchaser for a valuable consideration actually passed before notice of the fraud can, as against attaching creditors, claim title to the property which has been fraudulently disposed of. (*Bush v. Collins*, 35 Kas. 535.) Cooper had given only a bond for the conveyance of the real estate at the purchase, and when notice of the fraud of Blakely was given him, he need not have carried out the terms of the bond, because the consideration therefor wholly failed. The bond was not a negotiable instrument.

Again, an examination of the special findings of the jury shows that they are conflicting, uncertain, and somewhat inconsistent with the general verdict. (*Harvester Works Co. v. Cummings*, 26 Kas. 367; *K. P. Rly. Co. v. Peavey*, 34 id. 472.) While the jury found by the general verdict and one of the special findings, that Cooper had no actual notice of the fraud of Blakely at the time he made the purchase, and further found that the facts and circumstances concerning the sale were not such as to put a prudent man upon inquiry as to the object Blakely had in making the sale, they did find that the trade between Blakely and Cooper was consummated on November 25, 1884, between the hours of 9 P. M. and 12 M.; that Blakely made the sale to defraud his creditors; that no inventory of the stock of merchandise was taken by Cooper before the sale was made; that the sale was not made in the usual and ordinary course of business, and that it was made at an unusual hour. Further, the findings of the jury show that Cooper agreed to pay only one-half of the value of the stock of goods which he purchased. It looks very much as if Cooper bought the stock with such knowledge as would put a prudent man upon inquiry, notwithstanding the special finding of the jury to the contrary. (*Gollober v. Martin*, 33 Kas. 252; *Singer v. Jacobs*, 3 McCr. 638.)

Various other errors are alleged, but as a new trial must be had, we do not think it necessary to comment thereon. We

do not intend, however, to approve all of the proceedings of the trial court not herein referred to.

The judgment of the district court will be reversed, and a new trial ordered.

All the Justices concurring.