### No. 19,379.

### G. E. MEEK, *Appellee*, v. THE UNION PACIFIC RAILROAD COMPANY, *Appellant*.

#### SYLLABUS BY THE COURT.

1. STOCK CATTLE—*Failure of Carrier to Deliver to Purchaser—Measure of Damages.* The measure of damages for the failure of a common carrier to deliver goods is the value of the goods at the time and place of destination in the condition in which they should have been delivered, and the owner is entitled to recover such value less the charges for transportation and delivery.

2. SAME—*Statement of Facts—Measure of Damages.* On the 31st of October, 1912, the plaintiff purchased on the market at Kansas City, through a commission company, forty head of stock cattle, weighing in the aggregate 25,510 pounds, for which he agreed to pay an average price of $5.12 per hundred. They were shipped over defendant's railway, consigned to the plaintiff at Idana in Clay county. Through the negligence of the defendant they were never delivered. Forty-seven days later the plaintiff, through the same commission company, purchased thirty-five head of stock cattle weighing in the aggregate 22,910 pounds, and paid therefor the market price at that

time for that class of stock cattle, which was $5.85 per hundred. *Held,* that he can not maintain an action based upon the right to recover the difference between the market price of the cattle purchased on the 31st day of October and the price at which similar cattle could have been purchased on the same market forty-seven days later.

3. SAME—*Plaintiff Entitled to Nominal Damages Only.* Having paid nothing for the cattle wrongfully converted, and nothing for their transportation, the plaintiff, upon the facts of the case, was entitled to recover only nominal damages.

Appeal from Clay district court; SAM KIMBLE, judge. Opinion filed April 10, 1915. Reversed.

*R. W. Blair, C. A. Magaw, Thomas M. Lillard,* all of Topeka, and *F. L. Williams,* of Clay Center, for the appellant.

*W. T. Roche, F. B. Dawes,* and *R. C. Miller,* all of Clay Center, for the appellee.

The opinion of the court was delivered by

PORTER, J.: This is an appeal from a judgment in plaintiff's favor for damages alleged to have been caused by defendant's failure to deliver a carload of cattle.

On the 31st of October, 1912, the plaintiff purchased on the market at Kansas City through a commission company forty head of stock cattle of the aggregate weight of 25,510 pounds, paying an average price of $5.12 per hundred. They were shipped over the defendant's railway, consigned to the plaintiff at Idana, in Clay county. On the same day the commission company purchased for B. F. Carson, a customer at Belleville, two carloads of stock cattle, and the three cars went forward in the same train from Kansas City. Through a mistake of the train crew the car consigned to the plaintiff was carried past his station and delivered to Carson at Belleville. On December 17, 1912, the plaintiff, through the same commission company,

purchased thirty-five head of stock cattle, weighing in the aggregate 22,190 pounds, paying therefor the market price at that time for that class of stock cattle, which was $5.85 per hundred. He then brought this action to recover the sum of $186.22, the difference between the price contracted to be paid for the first carload and the amount paid for the second, and in his petition alleged that the cattle first purchased and those last purchased were all of the same general kind and quality, and were purchased by him for the same purpose, viz., stock cattle; that the sum sued for was the damages he sustained by reason of the advance in the market price of such cattle.

An employee of the commission company testified on behalf of plaintiff that $5.12 was the average cost of the first cattle, and that he saw them in the yards. His testimony further showed that the commission company paid $5.85 as the average market price of the cattle purchased on the 17th day of December; that the market price of stock cattle varied from day to day from twenty-five cents to forty cents per hundred, and that the price gradually advanced from the 31st day of October till the 17th day of December.

The general rule which obtains everywhere with respect to the measure of damages for the conversion of property is stated in the syllabus of *Shepard v. Pratt,* 16 Kan. 209, as follows:

"In actions in the nature of trover for the conversion of personal property, the measure of damages is ordinarily the value of the property at the time of the conversion, with interest thereon to the date of the verdict." (Syl. ¶ 8.)

(See, also, *Ball v. Campbell & Gilbert,* 30 Kan. 117, 2 Pac. 165; *Simpson v. Alexander,* 35 Kan. 225, 11 Pac. 171; *Dodson v. Cooper,* 37 Kan. 346, 15 Pac. 200.)

In *Gentry v. Kelley,* 49 Kan. 82, 30 Pac. 186, the action was for the conversion of a stock of goods, and the court approved the rule that the proper measure

of damages was the value of the goods at Salina and not at some wholesale point like Kansas City, St. Louis or Chicago.

It has been repeatedly held that the measure of damages for the failure of the common carrier to deliver goods is the value of the goods at the place of destination at the time and in the condition in which they should have been delivered.

"The owner is entitled to have the equivalent of the goods at that place, in the condition in which the carrier undertook to deliver them, less the charges for transportation and delivery." (3 Sutherland on Damages, 3d ed., § 918.)

Where the action against the carrier is for conversion the value is to be determined with reference to the time of the conversion at the place where it occurred, which is the place of destination in this case and not that of shipment. (6 Cyc. 530; *Union R. R. & Transportation Co. v. Traube*, 59 Mo. 355; *Railroad Company v. O'Donnell*, 49 Ohio St. 489, 32 N. E. 476, 34 Am. St. Rep. 579, 21 L. R. A. 117; *Sturgeon v. St. Louis, Kansas City & Northern Railway Co.*, 65 Mo. 569.)

Where the loss occurs after leaving the place of shipment the recovery is to be measured by the value at destination. (*The Steamboat Emily v. Carney*, 5 Kan. 645.)

"In determining the value at point of destination, the unpaid freight should be deducted, for while the shipper is not bound to pay freight where the carrier fails to perform his obligation to deliver in good condition, yet he should not have the advantage of the increased value of the goods due to their transportation, that is, the shipper is entitled to the net value at the place of destination." (6 Cyc. 531.)

(See, also, *Miami Company v. Railway Company*, 38 S. Car. 78, 16 S. E. 339, 21 L. R. A. 123.)

It is clear that the plaintiff can not maintain the action based upon the right to recover the difference between the market price of the cattle on the 31st day

of October and that at which similar cattle could have been purchased on the same market forty-seven days later. His contention is that it was for the jury to determine whether that was a reasonable time under all the circumstances for him to reinstate his deal and repurchase cattle to take the place of those wrongfully converted by the defendant.

The doctrine plaintiff relies upon has sometimes been applied where the property converted has a uniform standard of value, like stocks, bonds or grain, and in such cases it has been held to be the duty of the injured party to go upon the market within a reasonable time and reinstate his deal by a repurchase of the property at the market price, but that rule is applied only where the property is of such uniform quality and price that its value at the place where the conversion occurred can be shown in no better way than by the market price where purchased, and for the further reason that in such a case it is the duty of the injured party to minimize and lessen his damages as much as possible. (*Ball v. Campbell & Gilbert*, 30 Kan. 177, 2 Pac. 165; *Maddux v. Telegraph Co.*, 92 Kan. 619, 141 Pac. 585.) That measure of damages has no application to a case where the property varies in price and quality as in the present instance.

The practical difficulties in the way of correctly measuring the damages, upon plaintiff's theory of the case, is apparent from the evidence. The plaintiff never saw the first cattle purchased. One witness, an employee of the commission company, saw them, but he had never seen the second lot; no witness testified who saw both lots of cattle, and there was nothing in the evidence to show that the quality of those purchased in the second carload was the same as those in the first carload. While there was evidence that both loads of cattle answered the same general description of stock cattle, there was no evidence that the cattle in the first lot were of the same quality and value as those pur-

chased later. Everyone knows that while cattle are classed on the market as beef cattle, stock cattle, feeders, etc., different lots of cattle in each class vary in price according to quality. When the first purchase was made it appears that cattle of this general class varied in price from twenty-five cents to forty cents per hundredweight, and there was a variance in the prices of the same class of cattle when the second lot was purchased. Those purchased on the 17th of December averaged in weight fifty pounds heavier than those in the first lot.

It is also a well-established rule that if the value of the property at the time and place of conversion is shown by the evidence to be less than the cost to the owner, he is entitled to nothing more than nominal damages. (*Ball v. Campbell & Gilbert,* supra; *Maddux v. Telegraph Co.,* supra.)

In both of these cases the principle was applied that where the evidence showed that the owner could within a reasonable time have reinstated his deal at a lower price than that originally paid, he sustained no damages whatever. In order for the plaintiff to recover substantial damages he must have shown by the evidence that when the conversion took place the value of the cattle at Idana exceeded the price he agreed to pay, plus the cost of freight and transportation. The case here is controlled by the same principle applied in the case of *Meixell v. Kirkpatrick,* 29 Kan. 679. There the purchaser of municipal bonds at a given price failed to obtain possession of the bonds because of the wrongful act of an agent of the vendor. He had paid nothing on the contract, however, and it was held he was entitled to recover as damages, not the value of the bonds, but only such value less the contract price.

The plaintiff did not bring the action with the intention of recovering the value of the cattle at Idana, where the conversion took place, obviously because upon that theory he might not have been able to prove that

he sustained any damages. If he had sought to maintain the action upon the only recognized theory of the law as to the correct measure of damages in such a case he would have been entitled to recover whatever he could show the value of the cattle were at Idana when the conversion took place, provided the value there exceeded what he had agreed to pay for the cattle with the freight added. Since he has paid nothing for the cattle and had not paid the freight charges, it is manifest upon the evidence that he would have been entitled to recover no more than nominal damages.

The judgment will be reversed, and the cause remanded with directions to render judgment for the defendant.