No. 23,310.

ED BOOTS, *Appellant*, v. F. E. THOMPSON, *Appellee.*

SYLLABUS BY THE COURT.

1. BAILMENT OF CATTLE—*Contract—Performance by Bailee.* The findings of the jury as to the terms and conditions of a bailment of cattle and of performance of these terms and conditions by the bailee are held to be supported by sufficient evidence.

2. BAILMENT OF CATTLE—*Bailment Terminated by Terms of Contract—Cattle Not Removed by Bailor—Responsibility of Bailee After Termination of Contract of Bailment.* A bailment of cattle under which the bailee was to receive, pasture, and care for them until a time fixed in the contract, and then to produce them, dead or alive, or pay the value of those not produced, terminated at the expiration of the time limited; and where the bailor did not take his cattle away at the prescribed time, but sent a notice to the bailee that he would come and make a further arrangement to care for them for a longer time, but failed to do so, the responsibility of the bailee under the former agreement ended, and thereafter his responsibility was to exercise ordinary care of the cattle left in his possession awaiting the coming of the bailor to make the new arrangement or take possession of his cattle.

3. SAME. The continued possession of the cattle by the bailee after the termination of the bailment did not under the circumstances warrant the bailor in treating the former contract as continued or as a renewal of that contract.

Appeal from Finney district court; CHARLES E. VANCE, judge. Opinion filed December 10, 1921. Affirmed.

*R. W. Hoskinson, Robert S. Field,* both of Garden City, and *Seward I. Field,* of Medicine Lodge, for the appellant.

*H. O. Trinkle,* of Garden City, for the appellee.

The opinion of the court was delivered by

JOHNSTON, C. J.: This was an action by a bailor to recover from a bailee cattle placed in the pasture of the latter, a delivery of which was not demanded at the time fixed for their return; and later when the demand was made some of them were not found in the pasture. The jury found in favor of the bailee and the bailor appeals.

It appears that on April 16, 1917, Ed Boots placed eighty head of cattle in the custody of F. E. Thompson to be kept and grazed in a pasture containing twelve sections of land, and in which about 1,050 head of cattle were being grazed. The following is the contract of bailment:

"This is a contract between F. E. Thompson and E. Boots in which I, F. E. Thompson, are to pasture 80 head of cattle and furnish them with plenty of water and salt, and I am to be responsible for all cattle turned to me by him. I am to produce them dead or alive or pay the value of the ones I am unable

to produce for which I am to have $3.00 per head per season any time that. said cattle are not provided with sufficient water and grass, said Ed Boots has the privilege of removing said cattle by paying pro rata for the time they have been taken care of at the above basis.       F. E. THOMPSON,
"ED BOOTS."

About the same time and under an oral agreement forty head of steers additional were placed in the pasture under the terms mentioned in the written contract except that the plaintiff was to take these steers out of the pasture in the middle instead of the end of the grazing season, to wit, on August 1, 1917. On the 30th day of July, 1917, the plaintiff came to the pasture and after examining his steers decided that he would not take them out of the pasture at that time. The defendant was not at home at the time of inspection and the plaintiff sent a message which was delivered to defendant's wife to the effect that he had found the steers were doing so well that he had concluded not to take them away and that he would see the defendant and make further arrangements with him about pasturing them longer. He did not come to make such arrangements nor communicate with the defendant until about October 14, 1917, when it was found that 17 of the steers were missing, having escaped or been removed from the pasture. The plaintiff claimed that he had an option to take the steers out on August 1, or permit them to remain until November 1, but in answer to a special question the jury found that the agreement was that the steers were to be removed from the pasture on August 1.

The principal complaint is of an instruction given as to the duties and liabilities of the parties in the bailment. The court said:

"If you find and believe from the evidence that the written contract introduced in evidence was the only contract made between the parties governing the pasturing of the cattle or that the only agreement outside of the written contract was that the plaintiff should have the privilege or option of taking the steers on the first day of August or leaving them for the remainder of the season or a part thereof as he desired, as claimed by the plaintiff, then you should in your verdict charge the defendant with the value of the seventeen steers that were short as well as the two cows which are conceded to be chargeable to the defendant, and your verdict should be for the plaintiff for the value of such steers and cows less such amount as you find to be still due the defendant upon the pasture bill. On the other hand, if you should find from the evidence that the oral agreement was that the steers should positively be removed on the first day of August and by the terms of said oral agreement the plaintiff did not have the privilege of leaving the steers in the pasture after the first day of August, then the defendant could only be held liable for the two cows and such of the steers, if any, as he did not have in his possession on the first

day of August, and such of them, if any, as escaped or were removed from the pasture after the first day of August by reason of the fault or negligence of the defendant; that is to say the defendant under such an arrangement, if you find such an arrangement was made, was absolutely bound to account for all of the steers on the first day of August, but if any of the steers which were in his possession on that date escaped or were removed from the pasture after that date without fault or negligence on the part of the defendant then he would not be chargeable with those which so escaped or were removed, and in order to relieve himself from liability for such steers, it will only be necessary for the defendant to show to you that after the first day of August he exercised reasonable care and diligence in looking after and caring for said cattle; that is, such care and diligence as men of ordinary prudence are accustomed to exercise under like or similar circumstances. To which plaintiff duly excepted."

In behalf of plaintiff it is contended that as defendant did not deliver the steers or notify plaintiff that he was ready to deliver them, defendant held them under the terms and conditions of the former contract, that is, to "produce them dead or alive or pay the value of the ones I am unable to produce." As we have seen, the time limit of the bailment of the steers was August 1, 1917. Under the contract it was the duty of defendant to have the steers ready for delivery and to deliver them after payment of the pasturage at that time. It appears that on July 25, 1917, the plaintiff inspected the cattle and found all of them in the pasture and in good condition, and upon the day before the expiration of the bailment the plaintiff and his son inspected them and reported that they were doing well —so well that he desired to make an arrangement to leave them in the pasture for a longer time. The testimony was sufficient to show performance of the contract on the part of the defendant and that the steers were present and ready for delivery when the bailment expired. He was not required to take the steers to the plaintiff or do more than produce them upon the demand of the plaintiff. Where a time is definitely fixed for performance the bailment only continues until that time. (Hale on Bailments and Carriers, 252.) The expiration of the bailment and the readiness of the defendant to deliver the steers ended his responsibility under the provisions of that contract. The duty then devolved upon the plaintiff either to take his cattle away or to make arrangements for their further care. The initiative was upon him and he recognized the duty by notifying the defendant that he was coming to make another arrangement. The terms of the contract went far beyond the responsibility which the law imposes under the general principles of bail-

ment and practically made him an insurer of the cattle. It is competent for parties to enlarge the liability by contract, express or implied, and the defendant assumed the extraordinary liability and was bound to carry out the provisions of that contract. Having made full performance the plaintiff could not continue or impose this extraordinary liability for the future by his failure to remove his cattle or to enter into the new agreement, as he had promised to do. Plaintiff insists that as the defendant continued in the possession of the cattle he had the right to treat the contract as continued. If defendant had refused to surrender possession, and perhaps under some other circumstances from which a new agreement might have been inferred, there might have been grounds for treating the bailment as continued or renewed, but where the continued possession resulted from the inaction of the plaintiff and his failure to make the promised arrangement for future care, no new agreement or continuance of the extraordinary liability can be inferred. In some cases where time of bailment was indefinite or the bailee had not redelivered the property or given a sufficient excuse for his failure to do so at the end of the time fixed or where there were circumstances or conduct which warranted an inference of a new agreement to continue the bailment, the courts have held there might be grounds for treating the original bailment as continued or renewed. (*In re Parsell's Estate,* 184 Mich. 522; *Chamberlain et al. v. Pratt,* 33 N. Y. 47; Schouler's Bailments and Carriers, 3d ed., § 159; 4 Elliott on Contracts, § 3005; 5 Cyc. 207.) But as said in *In re Parsell's Estate:*

"The law of bailments does not, however, as in case of leases, imply a renewal of the former contract from the mere naked act of retaining possession, but possession, retained without objection after the period originally fixed has expired, in connection with other persuading circumstances, may raise a question of fact for a jury as to whether the bailment was terminated or continued and renewed." (p. 528.)

The plaintiff knew that the time limit of bailment had expired and that the steers were ready for redelivery and hence notice from defendant was not essential to a termination of the bailment. As plaintiff had sent notice that he was coming to make a new agreement for pasturing the steers for another period, the defendant had a right to assume that his responsibility under the former agreement was ended and that the steers were to be pastured thereafter on terms to be agreed upon. At least it can be said that his inac-

tion and continued possession of the steers under the circumstances did not imply a renewal of the former contract or the continuance of the bailment. (*Chamberlain et al., v. Pratt,* supra.) When the former contract had expired a new situation arose and thereafter the responsibility of the defendant was that imposed by the common law which exempted him from liability except for the failure to exercise ordinary care for the steers which remained in his possession awaiting the coming of the plaintiff to make the new arrangement or to take the cattle away. (*Grady v. Schweinler,* 16 N. D. 452; Schouler's Bailments and Carriers, § 101.)

Under the evidence the instruction of the court was a fair statement of the duties and responsibilities of the parties.

The judgment is affirmed.