No. 37,844

E. C. CROFOOT, *Appellee*, v. THE ATCHISON, TOPEKA AND SANTA FE RAILWAY COMPANY, a corporation, *Appellant*.

(217 P. 2d 280)

Opinion filed April 8, 1950.

*Henry Schulteis, Jr.,* of Topeka, argued the cause, and *C. J. Putt, W. E. Treadway* and *J. B. Reeves,* all of Topeka, and *LeRoy W. Raynolds,* of Emporia, were with him on the briefs for appellant.

*Clarence V. Beck,* of Emporia, argued the cause, and *Byron M. Gray,* of Topeka, was with him on the briefs for appellee.

The opinion of the court was delivered by

PRICE, J.: This is an appeal by the defendant railway company from a judgment for plaintiff in an action for the alleged conversion of a carload of cattle which defendant undertook to ship for plaintiff owner.

The principal question presented concerns the proper measure of damages under the facts of the case as here disclosed by the evidence.

Briefly summarized, the petition alleges that plaintiff, the owner of thirty-six head of branded steers and stags, on October 31, 1946, delivered them to defendant at its railway station at Matfield Green, Kan., for shipment to Beeler, Kan., for winter wheat pasture; that defendant as a common carrier for hire accepted and loaded the cattle for shipment and departed with them in a car attached to one of its freight trains. That prior thereto plaintiff had arranged for another person to receive at the point of destination the cattle so shipped, such other person to place them on winter wheat pasture, and that instead of delivering to consignee the cattle in question defendant delivered a carload of cows belonging to a person or persons unknown to plaintiff, but represented to consignee that such load of cattle was the load shipped by plaintiff. The petition further alleges that plaintiff did not discover the error until the following spring, but that immediately upon such discovery he notified defendant company in writing that the cows so delivered were not his cattle and made demand on defendant for the load of branded steers and stags actually shipped by him. That thereupon defendant took possession of and removed the cows but has failed, neglected and refused to deliver plaintiff's cattle to him. It is further alleged that defendant had knowledge of the fact plaintiff was shipping his cattle to Beeler to be placed on winter wheat pasture and that

by reason of the conversion on the part of defendant plaintiff was deprived of his rightful gain upon his cattle between the time they were shipped and when he first learned of the conversion by defendant.

The prayer of the petition is for recovery of the value of the cattle in the amount of $3,600 with interest from October 31, 1946; for the sum of $170 expenses incurred by plaintiff in attempting to locate his missing cattle; for the further sum of $2,200 on account of loss of normal gain the cattle would have made during the interval in question, and for reasonable attorney fees.

The answer of defendant company was a general denial.

Prior to trial the defendant offered to confess judgment in the sum of $4,000, exclusive of any attorney fee which the court might find due. This offer was refused by plaintiff.

Plaintiff's evidence at the trial, which was by jury, showed the following facts:

Plaintiff was a Chase county farmer and cattleman. In October, 1946, he purchased some mixed cattle at Wichita and trucked them to Matfield Green where they were branded. On October 31, 1946, he delivered seventy-two head of steers and stags to defendant company at Matfield Green where they were loaded into two cars, thirty-six head to the car, for shipment to Beeler, at which place they were to be put on winter wheat pasture. The consignee in the bill of lading was one Levan, a real estate broker of Ness City with whom plaintiff had previously made arrangements for the former to receive the cattle and to find suitable wheat pasture for them at a monthly rental of $3.50 per head. Levan did not know what kind of cattle plaintiff was going to ship him. He received two carloads on November 2, 1946, purportedly from plaintiff and so advised plaintiff by telephone, but no mention was made as to the kind or type. The two loads were put on winter wheat pasture by Levan. Later plaintiff shipped other cattle to Levan for the same purpose and these were mingled with the two carloads in question. On one or two occasions during the winter plaintiff was out in Ness county to look over his cattle but discovered nothing wrong. He noticed cows on pasture but assumed they belonged to another party. In April, 1947, he went out to Ness county to take his cattle off of pasture and at that time discovered that defendant had delivered only one carload of his steers and stags the previous fall and had delivered a carload of cows in place of the other load. He notified the claim department of defendant immediately and did

not take delivery of the cows. He paid pasture rental on them at the rate of $3.50 per head per month during the period in question. The record before us is silent as to the true ownership of the cows and neither is there any evidence as to what became of the carload of steers and stags belonging to plaintiff. Further, there is no evidence concerning just when or where the alleged conversion occurred.

Plaintiff's evidence also established that it was a common practice for eastern Kansas cattlemen to ship their cattle to western Kansas for the winter wheat pasture season under conditions and arrangements similar to those he had with Levan; that wheat pasture was particularly good that winter in Ness county and that his other cattle gained about 250 pounds per head during the season. There was further evidence that the cattle were worth from $100 to $112 per head on October 31, 1946, when they were delivered to defendant at Matfield Green for shipment. There is no evidence as to what their value would have been at Beeler, the point of destination.

Defendant objected to the evidence concerning their value at Matfield Green and to the evidence with reference to gain they normally would have made during the pasture season, but these objections were overruled.

Defendant demurred to plaintiff's evidence on the ground it failed to prove a cause of action. This demurrer was overruled.

The only evidence offered by defendant was the testimony of its station agent at Ness City, who handled the station work at Beeler, and its station agent at Matfield Green. The former testified that thirty-seven head were unloaded from one car and thirty head from another. His company report showed sixty-eight head delivered at Beeler, sixty-seven alive and one dead. The testimony of the other witness is immaterial for our purposes.

At the conclusion of all the testimony defendant moved for a directed verdict. This motion was overruled.

Defendant requested the lower court to give the following instruction to the jury:

"You are instructed that if you find that the defendant converted plaintiff's steers and stags, the measure of damage in this case would be the market value of said steers and stags at the place of destination named in the bill of lading, less the charges of transportation, plus interest from time of conversion to date of verdict."

This was refused and in lieu thereof, after telling the jury that plaintiff could not recover for money expended by him in attempting to locate the missing cattle and for pasture rental paid out by him,

the court, over defendant's objection, gave instructions numbered 2 and 3, as follows:

"No. 2

"In addition to the items of recovery mentioned in Instruction No. 1, plaintiff's petition contains three other recoverable items and evidence was introduced in this case in support of these and they are as follows:

"1. Value of the cattle shipped from Matfield Green, Kansas, which defendant converted to its own use.

"2. Reasonable attorney fee.

"3. Damages sustained by the plaintiff by reason of being deprived of his rightful gain and resulting profit from said cattle from the time of shipment and the time plaintiff learned of the conversion.

"As to item No. 1, you are instructed that under the evidence in this case the plaintiff is entitled to recover the sum of $3,938.00.

"As to item No. 2, you are instructed that under the evidence in this case the plaintiff is entitled to a reasonable attorney fee in an amount not to exceed $500.00.

"No. 3

"As to the item of damage No. 3 mentioned in instruction No. 2, it is the contention of the plaintiff that he sustained damage in the amount of Twenty Two Hundred Dollars ($2,200.00) in addition to the value of the cattle at time of said shipment, by reason of the failure of the defendant to deliver his cattle at Beeler, Kansas. The plaintiff contends that said damage in the amount of Twenty Two Hundred Dollars ($2,200.00) consisted of loss of profit, that is gain on his cattle which he might reasonably anticipate would accrue from their use of winter wheat pasture which plaintiff had rented in Ness County, Kansas, during the pasture season of 1946-1947. In this connection, you are instructed that loss of profit or prevented gain is a proper item of damage when the same is the proximate result of the defendant's act, and the amount thereof can be determined with reasonable certainty.

"You are instructed that the burden of proof is upon the plaintiff and before he can recover from the defendant for this item of damage he must prove by a preponderance of the evidence, as that phrase is hereinafter defined to you in these instructions, the following essential facts:

"1. That the thirty-six head of steers and stags owned by the plaintiff were to have been pastured on winter wheat pasture in Ness County, Kansas, during the 1946-1947 season and that defendant had notice of such fact.

"2. That plaintiff did not discover that the defendant had failed to deliver plaintiff's cattle at Beeler, Kansas, until on or about April 20, 1947.

"3. That if said cattle had been delivered at Beeler and had been permitted to be upon the wheat pasture during the 1946-1947 season that such cattle would have gained in weight and their market value would have been increased thereby between the time of shipment of said cattle from Matfield Green, Kansas, on October 31, 1946, and April 20, 1947.

"If the plaintiff shall prove each and all of these essential facts by a preponderance of the evidence, as that phrase is hereinafter defined to you in these instructions, he will be entitled to recover upon this item of damage in an amount not to exceed the sum of $2,200.00, otherwise not."

The jury returned a verdict in favor of plaintiff in the amount of $5,806, made up of the following items:

"1. Value of 36 head of cattle.......................... $3938.00
"2. Attorney fee........................................ 500.00
"3. Damages for loss of gain and resulting profit......... $1368.00"

and in addition thereto answered three special questions submitted at defendant's request; the substance of such answers being that at the time shipment was made the defendant, through its employees, had knowledge of the fact the cattle were being shipped to Beeler for the winter pasture season of an indefinite duration.

Defendant's motion for a new trial was overruled and judgment was entered for the full amount of the verdict. Defendant has appealed from the order overruling its demurrer to plaintiff's evidence and from the order overruling its motion for a new trial.

Defendant's theory of this lawsuit is as follows: It contends the demurrer to plaintiff's evidence should have been sustained for at least two reasons. First, that plaintiff's evidence merely established the value of the cattle at Matfield Green, the point of origin, rather than at Beeler, the point of destination, and it is argued that the correct rule for computing damages is as embodied in the requested instruction, *supra*, which was refused. Secondly, it is contended that the evidence clearly showed Levan to be the agent of plaintiff in their dealings and therefore his knowledge of the number and kind of cattle received at Beeler was imputable to plaintiff as principal, which fact in turn would preclude plaintiff from recovering for the gain during the interval in question. Defendant's contentions, with reference to the instruction refused and those given by the court, naturally follow, and, boiled down to its last analysis, defendant company argues that the lower court simply tried this case on an erroneous theory.

We first discuss the ruling on the demurrer in the light of the evidence of the value of the cattle at Matfield Green as of the date of shipment. Even if defendant's contention as to the proper measure of damages is correct—yet plaintiff's evidence did show *some* damage, that is, his cattle were lost, and for that reason we think the demurrer was properly overruled, irrespective of the admissibility of his evidence concerning his loss of gain. In passing, however, we cannot agree with defendant's argument that the evidence showed the relationship of principal and agent to exist between plaintiff and Levan—at least not to the extent urged. True, there

were some elements of "agency" present, but we do not think to the extent that knowledge by Levan of the kind and number of cattle received at Beeler was imputable to plaintiff. We think the relationship thus created was one of agistment, or that of bailor and bailee, as sometimes referred to. (*Cox v. Chase*, 99 Kan. 740, 163 Pac. 184; *Boots v. Thompson*, 110 Kan. 69, 202 Pac. 589; 3 C. J. S., Animals, § 15, p. 1107.) The demurrer to plaintiff's evidence was properly overruled.

But what about defendant's other contention, which goes right to the very heart of this case? In the absence of evidence as to where the conversion actually took place, plaintiff brought and tried this lawsuit on the theory that it occurred at Matfield Green, the point of origin; that the proper measure of damages was the value of the cattle at that time and place, and that in addition thereto he was entitled to recover the gain they normally would have made at the point of destination had such conversion not occurred. Under such a theory he of course would not be entitled to recover freight charges and pasture rent paid out by him, and undoubtedly that is the reason he did not sue for those items.

The authorities are in accord to the effect that it is difficult, if not impossible, to lay down any hard and fast rule as to the measure of damages in cases where a carrier fails to deliver the property shipped. Under some circumstances it has been held to be the value of the property at the point of origin—in others the value at the time and place of conversion—while under other circumstances the value at the point of destination, less transportation charges. (See 53 Am. Jur., Trover and Conversion, § 94, *et seq.*, p. 885.) Here there was no evidence as to where or when the conversion actually occurred.

Both parties rely on the case of *Railway Co. v. Implement Co.*, 73 Kan. 295, 85 Pac. 408, 117 Am. St. Rep. 468, 9 Ann. Cas. 790, 6 L. R. A. (N. S.) 1058. Plaintiff contends it supports his right to recover for gain to the cattle, while on the other hand defendant argues the holding supports its theory that the proper measure of damages is the value of the property at point of destination, less transportation charges

In that case an implement dealer in Hutchinson had ordered two threshing machines from the factory in Michigan and they were to be delivered at Larned. They were received for shipment by the carrier on June 12, and in the ordinary course would have arrived

at their destination within ten days, but on account of negligent delays did not arrive until some time in the month of August, long after the threshing season had closed. The dealer had already sold the two machines and was to receive his commissions out of the proceeds when collected. Due to the negligent delay in shipping the would-be purchasers cancelled their orders and the dealer was thus deprived of his commissions. He brought suit to recover for the loss of commissions and the value of the property converted and the court in upholding his contention said:

"The measure of damages is compensation for the injury sustained. An amount which will place the injured party in the same condition he would have occupied if no loss had occurred will satisfy this requirement. If in this case the machinery had been delivered according to contract, the price for which it had been sold would have been realized. Out of this amount the commission due the plaintiff would have been deducted. . . ,. The selling price at the place of delivery seems, therefore, to be the true measure of damages."

Plaintiff also relies on the case of *Degnan v. Young Bros. Cattle Co.,* 152 Kan. 250, 103 P. 2d 918, as authority for his right to recover for gain his cattle would have made during the winter except for the conversion. There the plaintiff sued for breach of contract to rent a pasture to him. As a result of the breach he was forced to sell his cattle in April and this court affirmed a judgment which permitted recovery for the gain in weight which the cattle would have made on the pasture and also for the increase in price, because cattle were higher in the fall than in the beginning of the pasture season. The court held that recovery might be had for loss of profits which were the direct and immediate fruits of the contract itself; that such profits were not to be regarded as consequential, remote or speculative in character but were to be regarded as part and parcel of the contract itself.

In the case of *Meek v. Railroad Co.,* 95 Kan. 111, 147 Pac. 1112, there was a failure by the carrier to deliver cattle at their proper destination. And while the facts were unlike those in the instant case, in the opinion the authorities were reviewed and the court followed the general rule to the effect that the measure of damages for the failure of a common carrier to deliver goods is the value of the goods at the time and place of destination in the condition in which they should have been delivered, and that the owner is entitled to recover such value, less the charges for transportation and delivery.

We think that under the facts of this case the proper measure of damages recoverable by plaintiff would be the value of the cattle at Beeler, the point of destination, rather than at the point of origin. The record, however, is silent as to what their value would have been had they arrived on schedule at Beeler. On the other hand, we think it is a fair assumption that the value at the latter place, had delivery been made, would have been substantially the same as that at the point of origin. Defendant company has not shown it has been or would be prejudiced by taking their value as that which the jury found it to be at the point of origin.

On the question of plaintiff's right to recover for gain by the cattle during the interval in question, we think the Implement Co. case, at 73 Kan. 295, and the Degnan case, at 152 Kan. 250, both *supra*, are readily distinguishable from the case at hand. In the former case the dealer had already sold the machines but due to the negligent delay by the carrier the sales fell through and he was thus denied his commissions. Such loss was directly attributable to the fault of the carrier to such a degree and extent as to be in fact a very part of the contract of shipment itself, and in no way could be considered as remote or consequential damages. In the Degnan case suit was brought for breach of contract to rent a pasture to plaintiff, which resulted in his being forced to sell his cattle due to inability to find other pasture, and the court properly held that recovery could be had for the resulting loss of profits which were the direct and immediate fruits of the contract itself. Such is not our case, and we are unable to agree with plaintiff's contention that under the facts here presented he is entitled to recover for the gain the cattle would have made.

It is of course argued that if in the instant case defendant had delivered the cattle at Beeler, as it undertook to do, plaintiff would have been enriched by the amount of gain they would have put on during the winter pasture season; but it must be remembered that plaintiff brought this action for *conversion* and elected to try it on the theory that so far as the measure of damages is concerned the conversion took place at the point of origin. We have already demonstrated that this theory is erroneous. Under the general weight of authority rule—to the effect that in a case such as this the correct measure of damages is the value of the goods at the time and place of destination in the condition in which they should have been delivered, less the charges for transportation—it appears

that the basis for deduction of transportation charges is that the shipper should not have the advantage of the increased value of the property due to its being transported—that is, he is entitled only to the net value at the place of destination. But here we have no proof of the value of the cattle had they arrived at Beeler and the record is also silent as to the amount of freight charges paid by plaintiff on the load which did not arrive. We have already expressed our views on the question of their value at Beeler, had they arrived there, and the amount of freight charges is of course ascertainable by both parties. In the absence of a showing of their enhanced value had they arrived at Beeler, in our opinion it would be inequitable to deduct such transportation charges under the facts of this case.

What disposition, then, is to be made of the case? In accord with the views heretofore expressed we have concluded that if plaintiff will accept the value of the thirty-six head of cattle as found by the jury, with interest, together with the transportation charges herein referred to, plus the attorney fee as found by the jury, and will so notify the clerk of this court within twenty days from the filing of this opinion, the judgment as so modified will be affirmed; otherwise defendant will be entitled to a new trial.

It is so ordered.